**Revised January 29, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-40032

_____

AFFILIATED PROFESSIONAL HOME HEALTH CARE AGENCY; CARRIE M. HAMILTON, Individually; WESSIE DOBBINS, Individually; ETHEL SHELTON, Individually,

Plaintiffs-Appellees,

VERSUS

DONNA E. SHALALA, SECRETARY, DEPARTMENT OF HEALTH & HUMAN SERVICES, ET AL.,

Defendants,

DONNA E. SHALALA, SECRETARY, DEPARTMENT OF HEALTH & HUMAN SERVICES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____
January 20, 1999

Before REYNALDO G. GARZA, JONES, and DeMOSS, Circuit Judges.

PER CURIAM:


I. FACTUAL AND PROCEDURAL BACKGROUND


In this appeal we must decide whether the district court properly granted a preliminary injunction in favor of Affiliated Professional Home Health Care Agency ("APRO").

APRO is a health care agency that specializes in providing

home-based health care.  It is an African-American owned enterprise, founded in 1993, that operates in Harris, Galveston, and Jefferson Counties, Texas.  In 1997, APRO was participating as a health care provider in the federal Medicare program, as established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*  Although that program is funded entirely by the federal government, and administered by the Secretary of Health and Human Services, various administrative functions are performed by state agencies that work for the Secretary under contract.  Those tasks included unannounced, on-site surveys of Medicare providers to ensure their compliance with the statutory requirements for Medicare participation.  After a state agency conducts such a survey, it submits its findings and recommendations to the Secretary.  Then the Secretary initiates any necessary action including the termination of the Medicare provider agreement between the Secretary and the health care agency.  In Texas, the Health Facility Licensure and Certification Agency, which is part of the Texas Department of Health ("TDH"), is the state agency that conducts Medicare surveys on behalf of the Secretary.

Once a health care agency is given notice that its provider agreement is being terminated, the provider may request an evidentiary hearing before an administrative law judge ("ALJ") on the Health and Human Services Department Appeals Board ("Appeals

2

Board"). The ALJ's decision becomes the Secretary's final decision for purposes of judicial review unless that decision is subsequently reviewed by the Appellate Division of the Appeals Board. The provider may seek judicial review in federal district court only after it has exhausted all of these administrative remedies. *See* 42 U.S.C. § 405(g) & (h); 42 U.S.C. § 1395cc(h)(1).

In 1997, the TDH conducted three separate surveys of APRO, each revealing that APRO had fallen out of compliance with various conditions of participation. After each of the first two surveys APRO was afforded an opportunity to correct the deficiencies in order to avoid having its provider status terminated. After the third survey revealed that APRO was still not in compliance, the Secretary issued a notice of termination effective November 15, 1997. The Secretary also ordered the suspension of Medicare payments to APRO.

On October 30, 1997, APRO, two of its corporate officers, and one of its patients (plaintiffs-appellees, collectively referred to as "APRO"), filed suit in federal court against the Secretary, the Deputy Administrator of the Health Care Finance Administration ("HCFA"), TDH, its Commissioner, and four of its surveyors (collectively referred to as "defendants"), alleging that they conspired to violate APRO's right to due process and equal protection under the United States Constitution.

3

Specifically, APRO charged the Secretary with improperly and arbitrarily enforcing various Medicare rules and regulations based solely on the fact that APRO is an African-American owned enterprise.

On October 30, 1997, APRO moved for a preliminary inunction seeking to prevent the defendants from terminating APRO's Medicare provider status. The Secretary and Deputy Administrator of the HCFA opposed the motion through written responses and moved to dismiss APRO's complaint for lack of jurisdiction.[1]

On November 6, 1997, the district court held a hearing on the motion for a preliminary injunction and granted the motion from the bench.[2] The Secretary appealed the district court's decision to this Court.

## II. STANDARD OF REVIEW

Our standard of review for a district court's granting of a preliminary injunction is "whether the issuance of the injunction, in the light of the applicable standard, constitutes an abuse of discretion." *Concerned Women for America, Inc. v. Lafayette County*, 883 F.2d 32, 34 (5th Cir. 1989). In performing

---

[1]The other defendants did not appeal the district court's holding.

[2]The district court enjoined the Secretary from terminating APRO's provider status, and from terminating APRO's Medicare funding. The district court also conditioned the injunction on APRO posting a bond of $1,000,000.

that review, findings of fact that support the district court's decision are examined for clear error, whereas conclusions of law are reviewed *de novo*.  *Id.*

## III. DISCUSSION

A preliminary injunction is an equitable remedy that may be granted only if the movant satisfies four requirements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.  *Sunbeam Products, Inc. v. West Bend Co.*, 123 F.3d 246, 250 (5th Cir. 1997).

In this case, the district court granted the preliminary injunction, holding that APRO would suffer irreparable injuries if it were not granted.  The lower court also held that denying the injunction would result in a loss of medical services to the under-served communities of Galveston, Harris and Jefferson Counties and that patients would lose the right to choose APRO as their health care provider.

On appeal, the Secretary argues: (1) that the district court erred in granting the preliminary injunction because it lacked subject matter jurisdiction; and (2) that APRO cannot assert any

5

of the various civil right claims that are invoked in its complaint because the United States has not waived its sovereign immunity to claims brought under these statutes.

## A. Jurisdiction Based on Section 405(g)

Title 42 U.S.C. § 1395, commonly known as the Medicare Act, establishes a federally subsidized health insurance program that is administered by the Secretary. *See Heckler v. Ringer*, 466 U.S. 602, 605 (1984). Title 42 U.S.C. § 405(g) is the sole avenue for judicial review of all claims arising under the Medicare Act. *Id.* Pursuant to her rule-making authority, the Secretary has provided that a final decision is rendered on a Medicare claim only after the claimant has pressed the claim through all designated levels of administrative review. *Id.*

In *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976), the Supreme Court held that jurisdiction under section 405(g) is determined under a two prong test. First, there must have been a presentment to the Secretary. *Id*. This element can never be waived and no decision of any type can be rendered if this requirement is not satisfied. *Id.* Second, the claimant must have exhausted his administrative review.

Although APRO asserts that the first prong of *Eldridge* can

still be satisfied,[3] there is absolutely no doubt that APRO did not exhaust its administrative remedies before seeking judicial review. Therefore, the failure to satisfy this second prong might be enough to deny them relief.

APRO correctly argues that exhaustion of administrative review may be waived. This may occur when a plaintiff asserts a collateral challenge that can not be remedied after the exhaustion of administrative review. *Id.* at 330-32.

On the facts of this case, APRO's claim is not a collateral claim for purposes of exhaustion. Although its claim is framed in constitutional terms and seeks compensatory and punitive damages, APRO also seeks to rescind the termination of its provider status and to halt the suspension of its Medicare payments. Such relief is unquestionably administrative in nature.

Additionally, to fully address APRO's claim that their due process and equal protection rights were violated through the improper enforcement of Medicare regulations, a court would necessarily have to immerse itself in those regulations and make a factual determination as to whether APRO was actually in

---

[3]APRO notes that it filed an unopposed motion for leave to supplement the record to show that the Secretary has actual knowledge of the presentment. In *Mathews v. Diaz*, 426 U.S. 67, 75 (1976), the Supreme Court concluded that it was not too late to supplement the record during pendency of the case on appeal wherein the Secretary stipulated the condition was satisfied.

7

compliance. Given the administrative nature of that inquiry, it cannot be reasonably concluded that APRO's claim is collateral to a claim for administrative entitlement.

The constitutional nature of APRO's claim does not, by itself, alter that conclusion. The Supreme Court has recognized that the constitutional tenor of a claim is not a determinative factor in deciding whether a claim is collateral. Instead, the exhaustion requirement is applicable to a constitutionally-based claim when that claim is "inextricably intertwined" with a substantive claim of administrative entitlement. *Id*. at 611; *see also Weinberger v. Salfi*, 422 U.S. 749 (1975). In this case, there is little doubt that APRO's claim is "inextricably intertwined" with a demand for benefits.

A more difficult issue, however, is whether the facts of this case give rise to a sufficient threat of irreparable harm so as to justify waiver of the administrative exhaustion requirement.

The briefs and the record do not address the evidence that was offered in support of the district court's finding of irreparable harm. Furthermore, it seems highly unlikely that the termination of APRO's provider status would result in a measurable loss of home-based health care in three separate counties. Similarly, it seems unreasonable to conclude that APRO's patients will be deprived of adequate home-based health

8

care if APRO is forced out of business.

### B. Jurisdiction based upon the Civil Rights Statutes

APRO's cites various civil rights statutes in its complaint against the Secretary; 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

This Court has long recognized that suits against the United States brought under the civil rights statutes are barred by sovereign immunity. *Unimex, Inc. v. United States Dept. of Housing and Urban Development*, 594 F.2d 1060, 1061 (5th Cir. 1979). Moreover, *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), provides a cause of action only against government officers in their individual capacities. There is no indication that the Secretary is being sued in her individual capacity. Therefore, neither *Bivens*, nor the civil rights statutes provide a valid jurisdictional predicate for this action.

### IV. CONCLUSION

We find that APRO should have exhausted its administrative remedies under section 405(g) and that APRO's civil rights complaints are barred by sovereign immunity. Accordingly, we

9

REVERSE the district court's decision based on lack of subject matter jurisdiction.