In re MID–DELTA HEALTH SYSTEMS, INC.; Mid–Delta Home Health of Charleston, Inc.; Mid–Delta Home Health, Inc.; Medical Services, Inc., Consolidated, Debtors.

Mid–Delta Health Systems, Inc.; Mid–Delta Home Health of Charleston, Inc.; Mid–Delta Home Health, Inc.; Medical Services, Inc.; and Clara T. Reed, Individually, Plaintiffs,

v.

Donna Shalala, as Secretary of the United States Department of Health and Human Services; the Health Care Financing Administration; Palmetto Government Benefits Administrators; And an Unknown Number of Agents or Employees Acting On Behalf of the United States Department of Health and Human Services, the Health Care Financing Administration, and Palmetto Government Benefits Administrators In Their Individual Capacities, Defendants.

Bankruptcy No. 98–25616.
Adversary No. 99–2160.

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 6, 1999.

Paul Mathis, Jr., Lake Tindall, LLP, Greenville, MS, for Mid–Delta Health Systems, Inc.

Jim M. Greenlee, Assistant U.S. Attorney, Oxford, MS, for Donna Shalala.

## *OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion to dismiss the above captioned adversary proceeding filed by the defendants pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure; response to said motion having been filed by the plaintiffs; and the court, having heard and considered same, hereby finds as follows, to-wit:

### I.

The plaintiffs, denominated hereinabove, are Medicare providers whose principal stockholder is the individual plaintiff, Clara T. Reed. They have filed this adversary proceeding against the defendants citing numerous theories of relief, to-wit:

1. The overpayment amount, owed by the plaintiffs has been erroneously calculated.

2. The audit procedures utilized by the defendants are inappropriate.

3. The plaintiffs have been libeled in a report issued by the General Accounting Office.

4. The defendants are guilty of racial discrimination, specifically in violation of 42 U.S.C. § 1983.

5. The defendants are guilty of fraudulent conduct.

6. The defendants have violated the Racketeer Influenced Corrupt Organizations Act (RICO).

7. The defendants have violated the Federal Claims Collection Act, 4 CFR § 102.4.

8. The defendants have violated the Inspector General Act, 5 U.S.C. app. No. 3, Sec. 1, et seq.

9. The defendants have violated provisions of the United States Constitution in that the plaintiffs have been denied equal protection of the laws and have been denied due process of law.

10. The plaintiffs seek injunctive relief regarding the enumerated allegations.

A careful reading of the complaint reveals that the plaintiffs are essentially asking this court to determine the amount of the overpayment made by the defendants through the Medicare program. Although there are several theories of recovery set forth in the complaint, the plaintiffs focus more stridently on the audit procedures utilized by the "financial intermediary," Palmetto Government Benefits Administrators (Palmetto). Regardless, the "bottom line" of the complaint centers on what is actually owed by the plaintiffs. Palmetto's audit procedures are simply the mechanism utilized by the defendants to ascertain their version of the overpayment amount.

## II.

█ In order to receive Medicare reimbursement for services rendered to persons receiving Medicare benefits, health care providers, such as the plaintiffs, must enter into provider agreements with the Secretary of the Department of Health and Human Services (Secretary). Under such agreements, the providers are reimbursed for their actual reasonable costs incurred in providing these services. Interim payments, based on estimates of the providers' costs, are made to the providers with subsequent corrective adjustments being made any time an overpayment or underpayment is ascertained. The payment of claims and the adjustment functions are performed by a financial intermediary, in this case, Palmetto.

The statute, applicable to this proceeding, contains an administrative and judicial review scheme. It is made applicable to Medicare determinations by 42 U.S.C. § 1395(i)(ii) and is codified at 41 U.S.C. § 405(h), as follows:

The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

The defendants have asserted in their motion to dismiss that, because of the aforementioned statute, this court does not have subject matter jurisdiction to consider the plaintiffs' complaint. For reasons which will be set forth hereinbelow, the court concurs, in part, with the defendants' argument.

The United States Supreme Court stated in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), that because of § 405(h), no judicial action shall be brought in which the administrative remedies of the claimant have not been exhausted. The statute is not limited to decisions of the Secretary on just issues of law or fact, but rather it extends to any action seeking to recover on any claim.

In *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Supreme Court stated that § 405(h) was sufficiently broad to preclude judicial review of Medicare provider claims, which were "inextricably intertwined" with Medicare Act payment determinations, before the administrative remedies, contemplated by the statute, had been exhausted. On the other hand, the court suggested that certain Medicare related claims may be "wholly collateral" to claims for benefits. Therefore, these claims would not be barred from federal court litigation because of § 405(h). In this context, the

court specifically mentioned *Beckless v. Heckler*, 622 F.Supp. 715 (N.D.Ill.1985), where a class action challenge to the Department of Health and Human Services' regulations was not "inextricably intertwined" with a claim for benefits.

For an excellent discussion of the distinction between causes of action that are "inextricably intertwined" with a claim for benefits under the Medicare Act, compared to causes of action that are "wholly collateral," see *Bodimetric Health Services, Inc. v. Aetna Life and Casualty*, 903 F.2d 480 (7th Cir.1990), *cert. denied*, 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). As noted earlier, this court is convinced that the allegations set forth in the plaintiffs' complaint are "inextricably intertwined" with claims for benefits, rather than being "wholly collateral" to claims for benefits.

The Fifth Circuit Court of Appeals in *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282 (5th Cir. 1999), has recently addressed this issue as follows:

> Title 42 U.S.C. § 1395, commonly known as the Medicare Act, establishes a federally subsidized health insurance program that is administered by the Secretary. See *Heckler v. Ringer*, 466 U.S. 602, 605, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Title 42 U.S.C. § 405(g) is the sole avenue for judicial review of all claims arising under the Medicare Act. Id. Pursuant to her rule-making authority, the Secretary has provided that a final decision is rendered on a Medicare claim only after the claimant has pressed the claim through all designated levels of administrative review. *Id.*

> In *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court held that jurisdiction under section 405(g) is determined under a two prong test. First, there must have been a presentment to the Secretary. Id. This element can never be waived and no decision of any type can be rendered if this requirement is not satisfied. Id. Second, the claimant must have exhausted his administrative review.

> . . . .

> APRO (Affiliated Professional Home Health Care) correctly argues that exhaustion of administrative review may be waived. This may occur when a plaintiff asserts a collateral challenge that can not be remedied after the exhaustion of administrative review. *Id.* at 330–32, 96 S.Ct. 893, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18.

> On the facts of this case, APRO's claim is not a collateral claim for purposes of exhaustion. Although its claim is framed in constitutional terms and seeks compensatory and punitive damages, APRO also seeks to rescind the termination of its provider status and to halt the suspension of its Medicare payments. Such relief is unquestionably administrative in nature.

> . . . .

> The constitutional nature of APRO's claim does not, by itself, alter that conclusion. The Supreme Court has recognized that the constitutional tenor of a claim is not a determinative factor in deciding whether a claim is collateral. Instead, the exhaustion requirement is applicable to a constitutionally-based claim when that claim is "inextricably intertwined" with a substantive claim of administrative entitlement. *Id.* at 611, 104 S.Ct. 2013, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622; see also *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In this case, there is little doubt that APRO's claim is "inextricably intertwined" with a demand for benefits.

> . . . .

> APRO's cites various civil rights statutes in its complaint against the Secretary; 28 U.S.C. § 1343 and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

> This Court has long recognized that suits against the United States brought

under the civil rights statutes are barred by sovereign immunity. *Unimex, Inc. v. United States Dept. of Housing and Urban Development,* 594 F.2d 1060, 1061 (5th Cir.1979). Moreover, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), provides a cause of action only against government officers in their individual capacities. There is no indication that the Secretary is being sued in her individual capacity. Therefore, neither Bivens, nor the civil rights statutes provide a valid jurisdictional predicate for this action. *Affiliated Professional Home Health Care Agency v. Shalala,* 164 F.3d 282, 285–286 (5th Cir.1999).

For other cases, including bankruptcy court decisions, that have addressed this jurisdictional issue, see *In the Matter of Clawson Medical, Rehabilitation and Pain Care Center, P.C.,* 12 B.R. 647 (E.D.Mich.1981); *In re St. Mary Hospital,* 123 B.R. 14 (E.D.Pa.1991); *In re St. John's Home Health Agency, Inc.,* 173 B.R. 238 (Bankr.S.D.Fla.1994); *American Academy of Dermatology v. Department of Health and Human Services,* 118 F.3d 1495 (11th Cir.1997); *In re Home Comp. Care, Inc.,* 221 B.R. 202 (N.D.Ill.1998); *In re The Southern Institute for Treatment and Evaluation, Inc.,* 217 B.R. 962 (Bankr. S.D.Fla.1998); and *In re Tri County Home Health Services, Inc.,* 230 B.R. 106 (Bankr.W.D.Tenn.1999).

## III.

■ Consistent with the substantive body of case law, this court is of the opinion that the plaintiffs must exhaust their administrative remedies prior to seeking judicial review through the above captioned adversary proceeding. However, the court recognizes the doctrine of "primary jurisdiction" as articulated by the United States Supreme Court in *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), to-wit:

'Primary jurisdiction' . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pacific Railroad Co.,* 352 U.S. at 63–64, 77 S.Ct. at 165, 1 L.Ed.2d at 132 (1956).

■ As set forth in *In re Shelby County Healthcare Services of AL, Inc.,* 80 B.R. 555 (Bankr.N.D.Ga.1987), under the doctrine of primary jurisdiction, a court does not surrender jurisdiction of the case; instead, the court postpones its exercise of jurisdiction pending a decision by the appropriate administrative agency.

In *Shelby County Healthcare Services,* Judge Stacey W. Cotton commented as follows:

One of the reasons often stated for invocation of primary jurisdiction is the "desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions." *Western Pacific Railroad Co.,* 352 U.S. at 64, 77 S.Ct. at 165. In addition to this, the expertise and specialized knowledge of the administrative agencies have been important factors in invoking the primary jurisdiction doctrine.

Because of the involvement of the Medicare reimbursement issues, the specialized knowledge, experience, and expertise of HHS and the need for uniformity in Medicare matters, this court is of the opinion that this is an appropriate case for application of the doctrine of primary jurisdiction.

. . . .

Notwithstanding this original subject matter jurisdiction, the court concludes that in this case application of the pri-

mary jurisdiction doctrine is appropriate. The court is satisfied that the Medicare matters can be determined by HHS without either undue delay or impact upon the administration of this bankruptcy case. Accordingly, the court invokes the doctrine of primary jurisdiction and hereby suspends and postpones its exercise of its jurisdiction pending a determination by HHS regarding the Medicare provider reimbursement issues."

*In re Shelby County Healthcare Services of AL, Inc.,* 80 B.R. 555, 562 (Bankr. N.D.Ga.1987).

### IV.

■ The court notes that the defendants have filed a separate motion to require the plaintiffs to assume or reject their provider agreements since they are in the nature of executory contracts. The plaintiffs have indicated that they fully intend to assume the agreements. However, pursuant to 11 U.S.C. § 365(b)(1), before assumption, the plaintiffs must convince the court, as Chapter 11 debtors, that they can cure any defaults existing in the executory contracts within a reasonable time and provide adequate assurance of performance in the future. As an element of assumption, the amount of the existing default must be determined. Without being overly simplistic, this court is of the opinion that the amount of the default will be practically identical to the amount of the overpayment that the plaintiffs seek to ascertain or determine in this adversary proceeding. Consequently, before this court can determine whether the provider agreements can be assumed by the plaintiffs, the administrative remedies, necessary to ascertain the amount of the Medicare overpayment, must be exhausted. Consequently, the court must hold in abeyance a decision on the defendants' motion to compel assumption or rejection until this process is completed.

### V.

Consistent with the opinion in *Shelby County Healthcare Services, Id.,* this court will suspend its exercise of jurisdiction over this adversary proceeding, as well as, the defendants' motion to compel assumption or rejection pending an exhaustion of the administrative remedies afforded by the Medicare statute to the plaintiffs.