**Troy MARSAW, et al., Plaintiff,**

v.

**TRAILBLAZER HEALTH ENTERPRISES, L.L.C., and Tommy Thompson, in his capacity as Secretary of the U.S. Department of Health and Human Services, Defendants.**

**No. CIV.A. G–01–633.**

United States District Court,
S.D. Texas,
Galveston Division.

March 28, 2002.

Anthony H Buzbee, Attorney at Law, Friendswood, TX, for Troy Marsaw, Loving Care Physical Medicine of Brenham, Inc. dba Brenham Rehab Clinic, Loving Care Physical Medicine of Bryan, Inc. dba Bryan Rehab Clinic, Chatanooga Physical Medicine, Inc., Loving Care Physical Medicine, Inc., Nashville Medicine, Inc., Loving Care Physical Medicine of Navasota dba Navasota Rehab Clinic, Dallas Rehabilitation Clinic, Inc. dba Superior Rehab & Therapy Center, Inc., Total Recovery Therapy & Rehab., Inc., Mid South Healthcare, Inc., All Valley Rehabilitation Clinic, Inc., plaintiffs.

Samuel G Longoria, U.S. Attorneys Office, Houston, TX, for Trailblazer Health Enterprises L L C, Tommy G Thompson, Secretary, of the U.S. Department of Health & Human Services, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

KENT, District Judge.

Plaintiffs Troy Marsaw ("Marsaw") and eleven corporate entities that owned and operated physical rehabilitation clinics across three states (collectively "Plaintiffs") bring this lawsuit against Defendants Trailblazer Health Enterprises, L.L.C. ("Trailblazer") and Tommy Thompson ("the Secretary"), in his capacity as Secretary of the U.S. Department of Health and Human Services ("HHS") (collectively "Defendants"), seeking to enjoin any further administrative proceedings before the Secretary, and additionally alleging causes of action for breach of contract, tortious interference with contract or prospective business relations, as well as violations of the equal protection and due process clauses of the Fifth Amendment of the United States constitution, 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Original Complaint and Request for Injunctive Relief. For the reasons articulated below, Defendants' Motion is hereby **GRANTED**.

### I.

Prior to the commencement of this lawsuit, Plaintiffs owned and operated a total of eleven physical rehabilitation clinics lo-

cated in Texas, Tennessee, and Georgia.[1] These clinics were licensed Medicare providers that offered physical therapy and rehabilitation services covered under Part B of the Medicare Act[2] to eligible Medicare beneficiaries, and then applied for remuneration for such services from the appropriate Medicare carriers. Although the Secretary of HHS is officially charged with the administration of the Medicare Act, the Secretary delegates this responsibility to the Centers for Medicare and Medicaid Services ("CMS"), previously called the Health Care Financing Administration ("HCFA"). The CMS, pursuant to the Secretary's powers, is authorized to contract with private insurance companies to administer Part B Medicare reimbursements to Medicare providers. *See* 42 C.F.R. § 421.5. Known as Medicare carriers, these contracting companies then process claims for payment, specifically determining whether or not the submitted expenses are covered under the Medicare Act and constitute reasonable and medically necessary services. *See* 42 C.F.R. § 421.200. In the instant case, Defendant Trailblazer was the private insurance company acting as the Part B Medicare carrier for Plaintiffs' seven Texas facilities.[3]

Since Defendants' Motion is brought pursuant to Fed.R.Civ.P. 12, the Court presents the facts exactly as averred by Plaintiffs in their Original Complaint, notwithstanding Defendants' starkly disparate construction of the facts. In June of 1999, a Trailblazer employee by the name of Connie Moulton ("Moulton") produced a list of approximately ninety-five clinic owners, all of whom were racial minorities, who provided services to Medicare recipients. At the bottom of this list, Moulton allegedly advised: "Please watch for these names on applications and discuss with me once identified." In early November of 1999, an African–American Trailblazer employee forwarded the list to Plaintiff Marsaw, and was later fired. Less than a month later, Marsaw claims he asked Trailblazer officials about the list, and was immediately threatened with adverse financial repercussions if he did not return the list. Shortly thereafter, Marsaw's clinics were placed on prepayment review status, requiring an individualized (rather than electronic) review of each reimbursement claim submitted by Marsaw. The denial rate for claims submitted by Marsaw's clinics soon skyrocketed from 2% (as averaged prior to June of 1999) to 100%. In total, Trailblazer denied almost two thousand Part B Medicare reimbursement claims submitted by Plaintiffs. In February of 2000, Trailblazer sent two officials to meet with Marsaw in Texas, ostensibly to discuss Marsaw's prepayment review

1. According to Plaintiffs' Original Complaint, the eleven corporate Plaintiffs are owned in whole or in part by Plaintiff Marsaw.

2. Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395, *et seq.*, commonly known as the Medicare Act, establishes a federally subsidized health insurance program for elderly and disabled persons. Medicare benefits are divided into two parts: Part A of the Medicare Act provides insurance benefits for hospitalization and post-hospitalization costs, 42 U.S.C. § 1395c, *et seq.*, while Part B covers supplementary medical insurance benefits, 42 U.S.C. § 1395j, *et seq.* Physical rehabilitation services are subsumed under Part B. *See* 42 U.S.C. § 1395x.

3. The record reveals that Cigna Healthcare was the Part B Medicare carrier for Plaintiffs' three Tennessee clinics, while Cahaba GBA was the Part B Medicare carrier for Plaintiffs' sole Georgia operation. Because Plaintiffs have not sued either of these carriers, it appears that the corporate Plaintiffs suing on behalf of these four clinics have no claims against Defendant Trailblazer, and essentially seek only to enjoin the pending administrative proceedings involving their Part B reimbursement claims.

status. Instead, the Trailblazer officials admonished Marsaw once again to return the list. After Marsaw refused, his clinics were placed on postpayment review status, resulting in the auditing of numerous payments already distributed to Marsaw's clinics. From these audits, Trailblazer determined that several hundreds of thousands of dollars in "overpayments" were distributed to Marsaw, and thereafter denied the vast majority of reimbursement claims submitted by Marsaw's clinics. Trailblazer also informed Medicare carriers in other states of Plaintiffs' overpayments, causing these carriers to similarly deny Plaintiff's reimbursement requests.

Marsaw alleges that Trailblazer's conduct has severely diminished his cash flow and forced him to close virtually all of his clinics. Specifically, Plaintiffs complain that as a direct consequence of Trailblazer's erroneous determinations and denials, they have been forced to undergo the unduly time and labor intensive administrative appeals process requiring them to present and appeal individually each erroneous decision made by Trailblazer. To date, Plaintiffs state that they have suc-

cessfully appealed nearly 330 claims, 300 of which were considered en masse by an appeals board in Tennessee, and another thirty of which were adjudicated by an administrative law judge in Houston.[4] The thousands of other reimbursement claims also being pursued by Plaintiffs are currently pending and awaiting final administrative review. Instead of completely exhausting these administrative remedies, however, Plaintiffs filed suit in this Court on October 12, 2001, asking this Court to enjoin any further administrative proceedings relating to Plaintiffs' claims for reimbursement. In short, Plaintiffs urge this Court to sideswipe the administrative review process, and adjudicate in bulk the remainder of Plaintiffs' claims. Additionally, Plaintiffs bring causes of action for violations of their equal protection and due process rights under the United States Constitution, 42 U.S.C. § 1981, and breach of contract. As to Defendant Trailblazer only, Plaintiffs allege tortious interference with contract or prospective business relations, and violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Now, Defendants contest the factual allegations asserted by Plaintiffs,[5] and further

---

4. Plaintiffs aver that they won 300 claims considered en masse by the Tennessee appeals board, and lost only four of thirty claims argued before the Houston administrative law judge.

5. Although the Court is bound to accept as true all well-pleaded allegations in Plaintiff's Original Complaint, it acknowledges that Defendants' perception of the events leading up to this lawsuit is at great variance with that of Plaintiffs. As set forth in their Motion to Dismiss, Defendants explain that in the early portion of 1998, Trailblazer advised CMS that physical medicine billings had increased in Texas by more than 500%, principally due to a massive upsurge in the number of physician groups owned and operated by non-physicians that were seeking to be certified as Medicare providers of physical medicine services. After a thorough review of its claims data, Trailblazer determined that a large por-

tion of physical medicine billings were medically unnecessary or fraudulent.

With particular regard to Plaintiffs' clinics, Trailblazer notified many of Plaintiffs' facilities in June of 2001 that its audit revealed serious deficiencies in supporting documentation for hundreds of already reimbursed Medicare claims submitted by Plaintiffs. Viewed together with similar audits conducted by Medicare carriers Cigna and Cahaba, Defendants concluded that the aggregate amount of Medicare overpayments made to Plaintiffs' facilities was in excess of three million dollars. Defendants anecdotally note that one of Plaintiffs' clinics billed Medicare for a twenty-one hour session of physical therapy on a single patient. In sharp contrast to Plaintiffs' version of the facts, then, Defendants maintain that Trailblazer's actions were predicated solely upon thorough audits of hundreds of Medicare claims.

move to dismiss Plaintiffs' action on the primary basis that this Court lacks jurisdiction over the subject matter, and that Plaintiffs have failed to state claims upon which relief can be granted.[6] After a careful review of the relevant law and the record before it, the Court concurs with Defendants' Motion to Dismiss, and turns now to the dispositive issues contained therein.

## II.

**■** Defendants characterize their Motion to Dismiss as one under 12(b)(1), lack of subject matter jurisdiction, 12(b)(2), lack of personal jurisdiction, 12(b)(5), insufficiency of service of process, and 12(b)(6), failure to state a claim upon which relief can be granted. Because the Court dismisses Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim, it need only discuss the legal standards applicable to these two grounds. A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof on a motion to dismiss under Rule 12(b)(1) is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984); *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D.Tex.1995). Additionally, a party is entitled to dismissal under Fed.R.Civ.P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted.

**■** A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Home Builders Ass'n,* 143 F.3d at 1010; *Benton v. United States,* 960 F.2d 19, 20 (5th Cir.1992). When considering a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir. 1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Builders Ass'n,* 143 F.3d at 1010 (applying standard in context of Rule 12(b)(1)); *Home Capital Collateral, Inc. v. FDIC,* 96 F.3d 760, 764 (5th Cir.1996); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994) (both applying standard in context of Rule 12(b)(6)). The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County,* 836 F.2d 921, 926 (5th Cir.1988).

## III.

Defendants request a dismissal of Plaintiffs' causes of action for lack of subject

---

**6.** Defendants additionally argue that this Court lacks personal jurisdiction over the United States and that service of process was insufficiently effected due to Plaintiffs' failure to serve the United States Attorney's Office, the United States Attorney General, and HHS, in strict accordance with Fed.R.Civ.P. 4(i). Plaintiffs state in their Response that they have now corrected this defect by serving the appropriate parties. Accordingly, and because Plaintiffs' lawsuit is dismissed on other grounds, the Court need not reach this issue in granting Defendants' Motion.

matter jurisdiction and failure to state a claim upon which relief can be granted. Specifically, Defendants contend that in the face of Defendants' sovereign immunity, this Court's jurisdiction to review claims brought against them arising under the Medicare Act is limited to that provided under Titles 42 U.S.C. §§ 405(g) and (h), which expressly preclude judicial review of any claims "arising under" the Medicare Act prior to the exhaustion of a claimant's administrative remedies. Because Plaintiffs' claims arise under the Medicare Act, and Plaintiffs admittedly have not exhausted all of their administrative remedies, Defendants argue that this Court lacks jurisdiction over the subject matter. Defendants also challenge the sufficiency of Plaintiffs' civil rights claims on the specific grounds that the Secretary is immune from such liability, and that 42 U.S.C. § 1981 bars only discrimination and impairment conducted under color of state law, while Title VI applies only to programs or activities receiving federal financial assistance.

**A. Claims Arising Under the Medicare Act**

▆▆▆▆ Title 42 U.S.C. § 405(g) provides the sole avenue for judicial review of all claims "arising under" the Medicare Act.[7] *See, e.g., Heckler v. Ringer,* 466 U.S. 602, 614–15, 104 S.Ct. 2013, 2021, 80 L.Ed.2d 622 (1984); *Weinberger v. Salfi,* 422 U.S. 749, 760–61, 95 S.Ct. 2457, 2464–65, 45 L.Ed.2d 522 (1975). This fact is evidenced by the plain text of 42 U.S.C. § 405(h), which stipulates: "The findings and decision of the Secretary after such a hearing shall be binding upon all individuals who were parties to such a hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." Thus, as has been construed by the Supreme Court, the third and final sentence of § 405(h) precludes federal question jur-

---

7. At the outset, the Court notes that the doctrine of sovereign immunity shields the federal government and its agencies from suit, except where explicitly waived. Over the years, Congress has broadened the government's consent to be sued through the passage of various statutes such as 42 U.S.C. § 405(g), which covers actions arising under the Medicare Act. Additionally, the Fifth Circuit and other appellate courts have held that federal immunity attaches with equal force to Medicare carriers and intermediaries acting within the scope of their official duties. *See, e.g., Peterson v. Weinberger,* 508 F.2d 45, 51–52 (5th Cir.1975) (applying federal immunity to Medicare fiscal intermediaries acting as agents of the United States); *Midland Psychiatric Associates, Inc. v. United States,* 145 F.3d 1000, 1004–05 (8th Cir.1998) (justifying immunity for Medicare carriers and intermediaries in part because insurers "might well rethink their contracts with the Government if they had to make Medicare claims decisions under the threat of tort liability"); *Bodimetric Health Services, Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 487–88 (7th Cir.1990) (applying the Medicare Act's immunity provision to Medicare fiscal intermediaries because dissatisfied claimants should not be able to "avoid the preclusive effect of section 405(h) by simply bringing suit against the fiscal intermediary instead of the Secretary"). Although Plaintiffs attempt to argue that Trailblazer was acting outside the scope of its official duties in denying Plaintiffs' Medicare claims, therefore stripping it of its immunity protection, the Court is unpersuaded. The decision to pay or deny reimbursement claims rests squarely within the purview of Trailblazer's authority, as expressly delegated by the Secretary, and Trailblazer exercised its discretion in denying Plaintiffs' claims, as required under the *Westfall* doctrine. *See Westfall v. Erwin,* 484 U.S. 292, 296–97, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988) (holding federal officials absolutely immune from tort liability for discretionary conduct within the scope of their official duties), *superseded by statute on other grounds.* Accordingly, both Defendants are entitled to federal immunity.

isdiction over claims "arising under" the Medicare Act and instead renders § 405(g) as the exclusive remedy for any such claims.

█ Section 405(g) states in pertinent part that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g). The Supreme Court has interpreted § 405(g) to bar judicial review of any denial of a Medicare benefits claim until after a final decision has been issued by the Secretary following a hearing. *See Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). In order to invoke jurisdiction under § 405(g), two conditions must be satisfied, one of which is nonwaivable, and the other of which is waivable. *Id.* The nonwaivable element is that a claim be presented to the Secretary for review. This condition can never be waived because without presentment, no decision of any type can be rendered. *Id.* The waivable element, and the one at issue here, is that a claimant must exhaust his administrative remedies. *Id.*

Under the elaborate scheme established by Congress, a claimant in Plaintiffs' position exhausts its administrative remedies by employing a three-stage process. First, if the claimant is dissatisfied with the initial disposition of its Medicare claim, it may request reconsideration by the rele-

vant Medicare carrier. 42 C.F.R. § 405.807. If the Medicare carrier again denies the claim, the claimant may argue its case before an administrative law judge. 42 C.F.R. § 405.815. If the administrative law judge similarly denies the claim, the claimant may then seek review by the Appeals Council. *Id.* Finally, if the Appeals Council denies the claim and the claim exceeds $1,000, the claimant may pursue judicial review of the Secretary's decision in a federal district court. *Id.* Typically, the power to determine when a claimant has exhausted its administrative remedies and a final decision has been rendered rests with the Secretary, since the Secretary bears the ultimate responsibility for the integrity of the administrative program. *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. Despite this general rule, however, the Supreme Court has recognized that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.* In particular, the Supreme Court has excepted the Secretary's judgment and permitted judicial review prior to the exhaustion of administrative remedies when the claim is "entirely collateral to [a] substantive claim of entitlement," or when the enforcement of the exhaustion requirement would result in irreparable injury to the claimant.[8] *See id.; Bowen v. City of New York,* 476 U.S. 467, 483, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986).

█ In the present case, the Secretary has determined that Plaintiffs have failed

8. Plaintiffs imply the existence of a third exception to the administrative exhaustion requirement, specifically stating that the Supreme Court has waived the exhaustion requirement when "exhaustion would be futile." However, in both *Eldridge* and *Bowen,* the Supreme Court waived the exhaustion requirement on the explicit grounds that the constitutional challenges brought by claimants were "collateral" to the substantive claims for entitlement, and that irreparable injury would occur. While the Court agrees that the concept that further administrative review would be futile is implicit in these latter two justifications, it does not believe that the futility is an independent ground for rejecting the Secretary's judgment.

to exhaust their administrative remedies. Plaintiffs do not actually dispute this determination, at least as to the thousands of claims still pending in the administrative appeals process,[9] but argue that their lawsuit falls within the exceptional category of cases identified by the Supreme Court in which the claimant's interest in having its claims adjudicated promptly is so great that deference to the Secretary's judgment is inappropriate. In support of this view, Plaintiffs point to the fact that certain evidence and causes of action cannot even be considered in the administrative hearings, such as the discriminatory circumstances under which Plaintiffs' claims were denied by Trailblazer, Plaintiffs' state law claims for breach of contract and tortious interference with contract or prospective business relations, and Plaintiffs' demand for lost profits and punitive damages. Based on these facts, Plaintiffs contend that their continued pursuit of the administrative review process is futile, and that failure to waive the exhaustion requirement will work an irreparable harm upon them.

The Fifth Circuit has spoken directly on this issue in a virtually identical context. In *Affiliated Professional Home Health Care Agency v. Shalala,* 164 F.3d 282 (5th Cir.1999), a case over which this Court incidentally presided at the district level, the plaintiff, APRO, was a health care agency that alleged that the Secretary and her agents had improperly and arbitrarily suspended and terminated its Medicare payments and Medicare provider status. *Id.* at 284. Prior to exhausting its administrative remedies, APRO filed suit in this Court seeking to enjoin the Secretary from suspending its Medicare payments and terminating its Medicare provider status, and asserting causes of action for violations of equal protection and due process under the United States constitution, and a slew of civil rights statutes. *Id.* After considering the evidence, this Court granted APRO's request for a preliminary injunction on the basis that APRO would otherwise suffer irreparable injuries, and that a denial of the injunction would result in a loss of medical services to the underserved communities of Galveston, Harris,

9. Plaintiffs do maintain, however, that they have exhausted their administrative remedies as to the nearly 330 claims that they have already appealed and won in administrative hearings. Plaintiffs further suggest that if the Court determines that subject matter jurisdiction is lacking over the thousands of other claims still pending, the Court should still permit Plaintiffs to pursue their constitutional and state law causes of action against Defendants regarding the already adjudicated 330 claims. The Court respectfully points out the serious impracticality and fallibility undergirding Plaintiffs' proposal. Plaintiffs' constitutional and state law claims are premised upon the principal allegation that Trailblazer denied Plaintiffs' Medicare billings en masse because Plaintiffs' clinics were owned by an African–American individual. In order to prove this allegation and concomitantly compile a record adequate for judicial review, Plaintiffs would have to demonstrate that thousands of Plaintiffs' claims were denied in bulk by Trailblazer. Although Plaintiffs have already won almost 330 claims, they would invariably be hard-pressed to prove a discriminatory motive on the denials of these claims alone. In light of this fact, the Court would be more than reluctant to consider Plaintiffs' claims in a piecemeal fashion. Finally, and perhaps most importantly, there is absolutely no indication that Trailblazer was the carrier that denied these particular 330 claims. Since 300 of these claims were decided by a Tennessee appeals board, the Court can only assume that these claims were related to billings submitted by Plaintiffs' Tennessee clinics. If this is the case, Defendant Trailblazer, the Part B Medicare carrier for Texas only, would not have handled these claims, and Plaintiffs' constitutional and state law actions alleging discriminatory practices by Trailblazer only would not be buttressed by Plaintiffs' success on these claims. Given all of these mitigating factors, the Court declines to engage in a separate jurisdictional analysis regarding the small portion of claims already appealed and won by Plaintiffs.

and Jefferson Counties. *Id.* at 285. On appeal, the Fifth Circuit reversed this Court's decision for lack of subject matter jurisdiction. Specifically, the Fifth Circuit analyzed the lawsuit in the context of § 405(g) and relevant Supreme Court case law, and ultimately held that "APRO's claim is not a collateral claim for purposes of exhaustion. Although its claim is framed in constitutional terms and seeks compensatory and punitive damages, APRO also seeks to rescind the termination of its provider status and to halt the suspension of its Medicare payments. Such relief is unquestionably administrative in nature." *Id.* With particular regard to APRO's constitutional claims, the Fifth Circuit elaborated that "to fully address APRO's claim that their due process and equal protection rights were violated through the improper enforcement of Medicare regulations, a court would necessarily have to immerse itself in those regulations and make a factual determination as to whether APRO was actually in compliance." *Id.* at 285–86. Recognizing and restating the Supreme Court's unequivocal determination in *Eldridge* and *Salfi* that "the exhaustion requirement is applicable to a constitutionally-based claim when that claim is 'inextricably intertwined' with a substantive claim of administrative entitlement," the Fifth Circuit concluded that "there is little doubt that APRO's claim is 'inextricably intertwined' with a demand for benefits." *Id.* at 286. As such,

APRO's claim was not collateral, and subject matter jurisdiction was lacking.[10]

The Fifth Circuit's decision in *Affiliated* clearly governs the instant case. Although Plaintiffs parenthetically attempt to distinguish *Affiliated* on the basis of minute factual and procedural differences, and the Fifth Circuit's failure to discuss in detail the futility and harm caused by the administrative review process, these delineations are both inaccurate and immaterial. Plaintiffs here have lodged identical or substantially similar claims against the Secretary and Trailblazer as those brought in *Affiliated,* most notably including Plaintiffs' request for a preliminary injunction to thwart the administrative review process and allow judicial review of Plaintiffs' remaining reimbursement claims prior to exhaustion, Plaintiffs' allegations of equal protection and due process violations under the United States constitution, and Plaintiffs' demand for compensatory and punitive damages. The Fifth Circuit in *Affiliated* unqualifiedly held that APRO's claims, although cloaked in constitutional terms and accompanied by requests for compensatory and punitive damages, nevertheless arose under the Medicare Act, such that APRO was required to exhaust its administrative remedies prior to obtaining judicial review. As to these causes of action and elements, then, the Court can conceive of no legitimate legal or other basis for deviating from controlling Fifth Circuit authority dictating that this Court lacks subject matter jurisdiction.[11]

---

**10.** The Fifth Circuit also found no basis in the briefs or record for supporting a finding of irreparable harm. As to this Court's determination that certain communities would suffer a loss in health care, the Fifth Circuit declared that "it seems highly unlikely that the termination of APRO's provider status would result in a measurable loss of home-based health care in three separate counties" or that "APRO's patients will be deprived of adequate home-based health care if APRO is forced out of business." *Affiliated,* 164 F.3d at 286.

**11.** In *Affiliated,* the Court admittedly embraced a rather expansive view of Supreme Court jurisprudence on a premature question of law in order to achieve what it considered to be a just and fair result at the time. However, the Court notes that it does not need to be hit over the head with a shovel twice, and will rigidly observe the clear mandates of the Fifth Circuit as set forth in *Affiliated.*

Moreover, the Supreme Court jurisprudence upon which *Affiliated* is directly predicated further bolsters the Fifth Circuit's interpretation of the law. In the few cases where the Supreme Court has found it justified to waive the exhaustion requirement, the factual circumstances were markedly disparate from those in the instant case. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the plaintiff filed suit in federal court challenging the constitutional validity of the Secretary's procedure of terminating disability benefits without a predeprivation hearing. 424 U.S. at 324, 96 S.Ct. at 898. The Supreme Court held that Eldridge's constitutional challenge was collateral to his substantive claim of entitlement because his "claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Id.* at 331, 96 S.Ct. at 900. Thus, because of the unique nature of Eldridge's constitutional claim, any subsequent administrative denial or upholding of Eldridge's substantive entitlement claim at the post-termination stage would not answer Eldridge's constitutional challenge. *Id.* at 331, 96 S.Ct. at 901. A decade later, the Supreme Court determined that exceptional circumstances also existed in *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The plaintiffs in *Bowen* averred that the Secretary had adopted an unlawful and unpublished internal policy that worked to deny disability benefits to a large class of deserving claimants. This systemwide policy eliminated certain steps from the agency's standard evaluation process, thereby bypassing an established requirement for an individualized assessment of each claimant's ability to return to work. *See id.* at 473, 106 S.Ct. at 2026. Upon comparing the circumstances in *Bowen* to those in *Eldridge*, the Supreme Court concluded that the claims in *Bowen* were similarly

collateral to the plaintiffs' claims for benefits, in part because "[t]he class members neither sought nor were awarded benefits in the District Court, but rather challenged Secretary's failure to follow the applicable regulations." *Id.* at 483, 106 S.Ct. at 2032. The *Bowen* court further held that the claimants would be irreparably injured by the enforcement of the exhaustion requirement since the ordeal of the administrative appeal process would likely trigger severe medical setbacks, and the trauma of having disability benefits cut off had already hospitalized many class members, such that interim benefits and even ultimate success on appeal could not adequately protect the plaintiffs. *Id.* at 483–84, 106 S.Ct. at 2032.

Against the backdrop of these Supreme Court cases, it is evident that Plaintiffs' lawsuit does not constitute the type of collateral claim, nor rise to the requisite level of irreparable harm, to justify the waiver of § 405(g)'s explicit exhaustion requirement. Unlike the claimants in *Eldridge* and *Bowen*, Plaintiffs' complaints can be adequately redressed in the administrative appeals process, such that resort to the administrative machinery will not be futile or irreparably harmful to Plaintiffs. Although Plaintiffs are in one sense challenging the procedure utilized by the Secretary and Trailblazer in denying their claims, at its core, Plaintiffs' lawsuit seeks adjudication of its substantive entitlement right, and ultimately, remuneration for its thousands of denied claims. Consequently, this case is quite unlike *Eldridge*, where the claimant could not be fully redressed by the administrative process because of the absence of a crucial administrative hearing, or *Bowen*, where the class members were exclusively contesting an invidious and systemwide procedure, and had already suffered irreparable harm at the hands of the administrative process. Instead, this case most closely resembles

*Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), where the claimants presented constitutional and procedural objections alongside their ultimate demand for benefits. *Id.* at 608–11, 104 S.Ct. at 2018–19. Although recognizing that the claimants in *Heckler* were facially contesting the Secretary's procedure in reaching her decisions, the Supreme Court nonetheless determined that the claimants' supposed procedural objections were "inextricably intertwined" with their underlying request for benefits, such that their claims had to first be channeled through the administrative review process. *See id.* at 614, 104 S.Ct. at 2021 ("It seems to us that it makes no sense to construe the claims of those three respondents as anything more than, at bottom, a claim that they should be paid for their BCBR surgery.").

Although Plaintiffs ironically cite to several of the above Supreme Court cases, they never attempt to dissect or apply the holdings of these cases to the instant circumstances. Instead, Plaintiffs merely conclusorily state that resort to the administrative review process will be futile, and that failure to grant a waiver will work an irreparable harm. The only slightly substantive argument offered by Plaintiffs in support of their view that they cannot be adequately redressed in the administrative hearings process is that they cannot raise evidence regarding Trailblazer's unlawful and discriminatory conduct, nor pursue their claims for breach of contract or tortious interference with contract or prospective business relations, nor recover lost profits or punitive damages. While the Court recognizes the much more limited scope of issues and remedies that may be considered and conferred under administrative agency review, it also

realizes Congress' intent in imposing such circumscriptions. The principal purpose of the exhaustion requirement is to prevent "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467 (citations omitted). These purposes are served "once the Secretary has satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter which is beyond his jurisdiction to determine, and that the claim is neither otherwise invalid nor cognizable under a different section of the Act." *Id.* Thus, in drafting the judicial review provision of the Medicare Act, Congress was attempting to strike a delicate balance between a claimant's right to immediate judicial access and the appropriate deference to be accorded to an administrative review system that processes millions of claims per year. *Heckler*, 466 U.S. at 626, 104 S.Ct. at 2028. In consideration of these competing factors, Congress chose to require claimants to first proceed through the much more myopic administrative machinery, and then seek judicial review only if necessary. Even though Plaintiffs are correct in asserting that they may never be able to pursue their state law contract or tort claims or receive lost profits or punitive damages if they are successful on administrative appeal,[12] this result is implicit in Congress' scheme and cannot be classified as mere happenstance. The right to sue the federal government and its agencies and officers is a privilege granted exclusively by Congress alone, and Congress is therefore

---

**12.** For example, Plaintiffs emphasize the fact that § 405(g) would deprive them of the opportunity to obtain lost profits and punitive damages regarding the nearly 330 claims that they have already appealed and won.

free to limit the remedies as it deems appropriate. *See Bodimetric Health Services, Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 n. 5 (7th Cir.1990) (observing that the administrative process may not afford plaintiff all of the relief it sought pursuant to its state law claims, but nevertheless concluding that "Congress, through its establishment of a limited review process, has provided the remedies it deems necessary to effectuate the Medicare claims process").

Moreover, with specific regard to Plaintiffs' state law claims for breach of contract and tortious interference with contract or prospective business relations, the Court similarly finds that subject matter jurisdiction is wanting because these claims arise under the Medicare Act. Although the Fifth Circuit has not confronted this particular issue, the Court is amply guided by the liberal construction of "arising under" embraced in *Affiliated*, as well as related opinions emanating from other circuits. Based on this precedent, the Court concludes that Plaintiffs' state law contract and tort claims are "inextricably intertwined" with Plaintiffs' substantive claims for entitlement. Principally, in order to evaluate whether Trailblazer breached its Medicare carrier contract, or tortiously interfered with Plaintiffs' prospective business relations, the Court would be forced to examine whether or not Trailblazer wrongfully denied Plaintiffs' Part B Medicare reimbursement claims. Thus, much like Plaintiffs' claims for violations of equal protection and due process, Plaintiffs' state law claims cannot be said to be collateral to their request for benefits, and this Court is therefore wholly incompetent to adjudicate such claims prior to Plaintiffs' exhaustion of their administrative remedies.[13] *See Midland Psychi-*

*atric Associates, Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir.1998) (deeming plaintiff's tortious interference claim as arising under the Medicare Act since "hearing [plaintiff's] tortious interference claim would necessarily mean redeciding … Medicare claims decisions"); *Bodimetric*, 903 F.2d at 487 (holding that plaintiff's state law contract and tort claims arose under the Medicare Act because a "party cannot avoid the Medicare's Act jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits"). To hold otherwise would not only defy the principles enunciated in *Affiliated*, but concomitantly undermine the statutory framework by which Congress intended Medicare claim disputes to be resolved.

## B. Section 1981 & Title VI Claims

Defendants also move to dismiss Plaintiffs' causes of action for violations of 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Defendants assert that Plaintiffs have failed to state claims upon which relief can be granted, therefore warranting dismissal under Fed.R.Civ.P. 12(b)(6). The Court agrees with Defendants' analysis, and additionally notes that Plaintiffs have failed to object to Defendants' arguments.

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens …" 42 U.S.C. § 1981(a). In 1991, Congress amended this statute to

---

**13.** In any case, because the Court has already found subject matter jurisdiction to be lacking over Plaintiffs' federal question claims, it can-

not properly exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

include the additional provision that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment *under color of State law.*" 42 U.S.C. § 1981(c) (emphasis added). Plaintiffs aver that Defendants violated § 1981 by racially profiling and discriminating against Marsaw's clinics. As to the § 1981 claim against the Secretary, the Fifth Circuit has long recognized that suits against the United States brought under the civil rights statutes are barred by the doctrine of sovereign immunity. *Affiliated,* 164 F.3d at 286 (citation omitted). As to Defendant Trailblazer, it is undisputed that Trailblazer was acting under color of federal law, *not* state law. The plain language of § 1981(c) prohibits discriminatory actions conducted under color of state law only, and the Court is unaware of any authority for extending § 1981(c) to discriminatory actions conducted under color of federal law. *See, e.g., Davis–Warren Auctioneers, J.V. v. Fed. Deposit Ins. Corp.,* 215 F.3d 1159, 1161 (10th Cir.2000) ("We join the Seventh and Eleventh Circuits in holding that § 1981 is inapplicable to alleged discrimination under federal law."); *Williams v. Glickman,* 936 F.Supp. 1, 3–5 (D.D.C.1996) (exploring the legislative history of § 1981 and finding no basis for overriding the plain text of the statute). As such, the Court concludes that Plaintiffs have failed to state a § 1981 claim against either Defendant.

 Plaintiffs' Title VI claim against Trailblazer is similarly insufficient to withstand dismissal. Title VI stipulates that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiffs mischaracterize Trailblazer's duties as constituting a program or activity receiving federal financial assistance. However, Trailblazer, like all Medicare carriers and intermediaries, are agents of the federal government acting pursuant to the express mandates of a federal agency. Because Title VI does not apply to programs administered directly by a federal agency, Trailblazer's actions are exempt from Title VI liability. *See* 42 U.S.C. § 2000d–4a (defining "program or activity" and "program"); *Glickman,* 936 F.Supp. at 5–6 ("Significantly, the statutory definitions of 'program or activity' and 'program' do not include federal agencies. Thus, Title VI does not apply to programs conducted directly by federal agencies.").

## IV.

For all of the reasons set forth above, the Court hereby **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Original Complaint and Request for Injunctive Relief pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The Court specifically finds that it lacks subject matter jurisdiction under 42 U.S.C. § 405(g) over Plaintiffs' request for injunctive relief, causes of actions for violations of the equal protection and due process clauses of the Fifth Amendment of the United States constitution, breach of contract, and tortious interference with contract or prospective business relations. The Court further holds that Plaintiffs have failed to state claims under 42 U.S.C. § 1981, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** any and all of Plaintiffs causes of action in this lawsuit. Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**