United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 27, 2005**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
for the Fifth Circuit

_____

m 04-50231

_____

ANGELINA M. TORRES,
ALSO KNOWN AS ANN DOE,

Plaintiff-Appellant,

VERSUS

COUNTY OF WEBB;
STATE OF TEXAS,
AND UNKNOWN AGENTS IN THEIR OFFICIAL
AND PERSONAL CAPACITIES, JOINTLY AND SEPARATELY;
CITY OF LAREDO,
AND OTHER UNKNOWN AGENTS IN THEIR OFFICIAL
AND PERSONAL CAPACITIES, JOINTLY AND SEPARATELY;
CATHOLIC DIOCESE OF CORPUS CHRISTI,
JOINTLY AND SEPARATELY;
DIOCESE OF LAREDO,
JOINTLY AND SEPARATELY;
CABLE NEWS NETWORK (CNN),
AND ITS AFFILIATES, JOINTLY AND SEPARATELY;
COLUMBIA BROADCASTING SYSTEM (CBS),
AND ITS AFFILIATES, JOINTLY AND SEPARATELY;
NATIONAL BROADCASTING COMPANY (NBC),
AND ITS AFFILIATES, JOINTLY AND SEPARATELY;
TEXAS DEPARTMENT OF AGRICULTURE;
CENTRAL INTELLIGENCE AGENCY,
AND UNKNOWN AGENTS, IN THEIR OFFICIAL
AND PERSONAL CAPACITIES, JOINTLY AND SEPARATELY,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
m A-02-CV-550-SS

Before GARWOOD, SMITH, AND DEMOSS,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Angelina Torres, a licensed attorney proceeding *pro se*, appeals orders (1) dismissing her numerous claims of federal constitutional and civil rights violations (pursuant to 42 U.S.C. §§ 1981, 1982, 1983 and 1985, and violations of the First, Fourth, Fifth, Eighth, Thirteen, and Fourteen Amendments) and federal and state tort law violations; (2) denying her motion for reconsideration, motion to vacate judgment, and motion for a new trial; and (3) denying her a temporary restraining order, preliminary injunction, permanent injunction, and motion for protective order. We affirm.

I.

Torres sued the State of Texas, Webb County, the City of Laredo, the Catholic Diocese of Laredo, the CIA, CBS, CNN, NBC,[1] and their unknown agents, alleging, *inter alia*, invisible and unidentified voices in her home that invaded her privacy; electric shocks and macing at the county courthouse and elsewhere that interfered with her constitutional rights of travel, free expression of religion, and free speech; and transmission of altered national and local news programming directed solely at her that slandered her;[2] and tarring and feathering by unknown individuals inside city hall. Torres also contends that defendants subjected her to high frequency noises "created by sound waves aimed at the Plaintiff's ears and inflicting upon her ears sounds of conversations of persons unknown to the plaintiff which are insulting and offensive and intended to cause and create extreme emotional distress, with the use of audio speaker devices believed to be of a metallic nature whose origination and location cannot be determined."

Torres further alleges that the diocese "engaged in concerted anti-abortion activities that interfered with the Appellant's right to practice her Catholic faith and ultimately caused her to suffer emotional distress by subjecting her to an assault by a Catholic priest after Mass, which in turn caused her to be intimidated so as to forego attending church for fear of further attacks." She also avers employment discrimination and interference with employment rights through

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The suit against NBC was dismissed for inadequate service of process.

[2] One such alleged comment directed solely at Torres said "Black, Black" and used other words that had racial overtones. Another comment, again transmitted solely to her, was allegedly uttered by Dan Rather and included a disgusting remark related to the female anatomy.

slanderous activities akin to "blacklisting." According to Torres, these acts were part of a vast conspiracy between and among the defendants to target her for ridicule and harassment because she had counseled clients on their right to abortion.

Because Torres did not delineate the role that each defendant played in these activities, the district court, based on her various other filings, construed the amended complaint to assert the following causes of action against each defendant: (1) employment discrimination, (2) battery, (3) intentional infliction of emotional distress, (4) slander, (5) invasion of privacy, (6) violations of §§ 1981 and 1982, and (7) violations of § 1983 for allegedly violating, and conspiracy under § 1985(3) to violate, her First, Fourth, Fifth, Thirteen and Fourteen Amendment rights. Torres's claims were dismissed under Federal Rule of Civil Procedure 12(b)(1) and (6) and on summary judgment.

## II.
### A.

Dismissals under rule 12(b) are reviewed *de novo*, *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997), and so is the dismissal on summary judgment, *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The dismissal of all claims against the federal, state, local, and CIA unnamed officers or agents in their personal or official capacity was proper because these agents were not served despite Torres's receipt of an extension of time beyond the 120-day statutory limit. *See* FED. R. CIV. P. 4(m), *Jackson v. Widnall*, 99 F.3d 710, 712 n.1 (5th 1996) (dismissing suit against defendants that were not timely served).[3]

The district court was also correct in dismissing all claims other than the Title VII claims against the state as barred by the Eleventh Amendment.[4] Moreover, summary judgment on all claims against the diocese was proper because Torres did not timely file a motion in opposition to summary judgment, in disregard of not only the local rules but also an express court order noting that if Torres failed to respond to the diocese's motion within the time mandated by the local rules, the motion would be granted as unopposed.

### B.

With respect to the federal and state tort claims for assault and battery, intentional infliction of emotional distress, slander, and invasion of privacy, the district court was correct in dismissing the claims against the city and county as barred by the doctrine of state law sovereign

---

[3] At least one court has held that service on the agency may be sufficient where the identity of the agents is unknown. *See Ecclesiastical Order of the Ism of Am*, *Inc.*, *v. Chasin*, 653 F. Supp. 1200 (E.D. Mich. 1986) (arguing that this procedure has been used by many courts). Torres, however, has failed to raise this argument on appeal (and apparently in the district court) and so has waived it. *See, e.g.*, *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000). At the very least, she could have argued that it was her intention to determine the identity of the unknown agents through discovery, but she failed to raise that argument, as well, on appeal. *See, e.g., Li Kin Wah v. Wu Hak Kong*, 1986 WL 3784 (S.D.N.Y. March 26, 1986).

[4]*See Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (holding that federal courts are without jurisdiction to consider suits against unconsenting states pursuant to either federal or state law).

immunity.[5] The tort claims against the CIA are also barred because Torres did not file suit within six months of the CIA's denial of her claims as required by 28 U.S.C. § 2401(b).[6] We also affirm the summary judgment on the tort claims against CNN and CBS because they are entirely without merit.[7]

[5] *Travis v. City of Mesquite*, 830 S.W.2d 94, 104 (Tex. 1992) (stating that political subdivisions of the State of Texas are immune from tort liability absent consent to be sued). The Texas Tort Claims Act does not waive immunity for the intentional tort claims asserted by Torres.

[6] Torres received the letter of denial from the CIA on September 10, 2001, and sued on August 28, 2002.

[7] With respect to the assault and battery claim, Torres was unable to meet the "physical contact" requirement, given her deposition testimony that she never had physical encounters with anyone from CBS or CNN. Torres was also unable to make a claim for intentional infliction of emotional distress because she conceded that had no physical encounters with anyone from CNN and CBS, which contradicts her assertion that the defendants subjected her to electric shock and torture that caused her severe emotional distress. Additionally, as the district court correctly pointed out, the mere insults that Torres alleges were uttered by persons at CNN and CBS individuals do not rise to the level of extreme and outrageous conduct that Torres must prove to make a claim for intentional infliction of emotional distress. *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W. 3d 734, 741 (Tex. App.SSHouston [14th Dist.] 1999, no pet.).

The claim for slander also fails as a matter of law because Torres admitted that the alleged slanderous statements were not published to a person other than Torres. *See, e.g., Baubles & Bead v. Louis Vuitton, S.A.*, 766 S.W. 2d 377, 380 (Tex. App. 1989). Last, Torres's claim for invasion of (continued...)

## C.

Torres's constitutional and civil rights claims against the CIA are barred by federal sovereign immunity. *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). To make a claim under §§ 1981 and 1982 against the remaining defendants, Torres must allege that defendants' interference with her ability to get a job and to contract and respectively with her right to purchase, sell, hold, or convey property was racially motivated.[8] Torres only alleged that the interference was a result of her advocacy of unpopular pro-choice beliefs. Because she never alleged racial motivation, the claims under §§ 1981 and 1982 were correctly dismissed.

Torres's claims under §1985(3) similarly fail because she did not allege that racial or other invidious class-based animus motivated the alleged conspiracy to violate her constitutional rights. Although Torres did allege that the conspiracy was motivated by opposition to her pro-abortion beliefs, "opposition to abortion" does

[7](...continued)
privacy fails because she admitted she does not know to whom the two voices of individuals inside her home belong. Her unsubstantiated allegations that they may belong to persons at CNN or CBS are not competent summary judgment evidence and fail to raise an issue of material fact as to whether CNN or CBS intentionally intruded, physically or otherwise, on her solitude, seclusion, or private affairs or concerns.

[8] *See Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994) (requiring proof, *inter alia*, of intent to discriminate on the basis of race to make § 1981 claim); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1989) (indicating that only racially-motivated actions are actionable under § 1982 and that Jews and Arabs are races that Congress intended to protect under the statute).

not constitute the class-based invidious animus required by that statute.[9]

The claims against the city and county under §1983 were properly dismissed under rule 12(b)(6) because Torres failed to allege the existence of a city or county policy that resulted in the deprivation of her rights. She merely claimed acts on part of unknown agents of the county or city, for which the two entities cannot be found vicariously liable. *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 690 (1978). The § 1983 claims against CNN and CBS were also properly dismissed on summary judgment because there is nothing in the record, except Torres's unsubstantiated allegations, that either acted in concert with any state government officials.[10]

Summary judgment against all defendants on the title VII claims was also appropriate. Under title VII, exhaustion of administrative remedies is a prerequisite for maintaining a cause of action. Failure to exhaust remedies results in dismissal on the merits. *Dao v. Auchan Hypermarket*, 96 F.3d 787 (5th Cir. 1996). Torres admitted at the October 24, 2004, hearing that she has never filed a discrimination complaint with the EEOC or the Texas Commission on Civil Rights. Moreover, she alleged that the discrimination ended in 2002. Her complaint with the EEOC was filed after October 2003 and thus was not within the statutory period, because it was more than 180 days after the alleged discrimination ended.

III.

Torres avers that the district court abused its discretion by denying her motion for reconsideration, to vacate judgment, and for a new trial. The motion itself seeks relief only under Federal Rule of Civil Procedure 59(a) and (e) and expressly disclaims any relief under Federal Rule of Civil Procedure 60.

The denial of a rule 59(a) motion for new trial is reviewed for abuse of discretion and is ordinarily not appealable unless new matters arise after entry of judgment. *Youmans v. Simon*, 791 F.2d 341, 349 (5th Cir.1986). Torres fails to specify in her appellate brief what the new matters are. In her motion for new trial, she asserts that she found new evidence of employment applications and other documentary evidence supporting her claim of employment discrimination. Even if this were true, this evidence is immaterial, because it does not pertain to or negate the determination that Torres's claim is time-barred for failure to exhaust her administrative remedies within the statutorily-mandated time frame.

The denial of a rule 59(e) motion to alter or amend the judgment is appealable and is reviewed for abuse of discretion. *Id.* Torres contends the district court committed a manifest error of law when it cited *Tolbert v. United States*, 916 F.2d 245 (5th Cir. 1990), which held that a failure to exhaust administrative remedies deprives the court of subject matter jurisdiction. We note that this argument is relevant only to Torres's employment discrimination claims. Even for those claims, although *Zipes v. Trans*

---

[9] *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("Respondents assert that there qualifies alongside race discrimination, as an 'otherwise class-based, invidiously discriminatory animus' covered by the 1871 law, opposition to abortion. Neither common sense nor our precedents support this."). *Bray* held that the class discriminated against under § 1985(3) "cannot be defined simply as the group of victims of the tortious action." *Id.*.

[10] *See Wallace*, 80 F.3d at 1047 (stating that "unsubstantiated assertions" will not satisfy the non-movant's burden).

*World Airlines, Inc.*, 455 U.S. 385, 393 (1982), holds that failure to exhaust remedies is not a jurisdictional bar, Torres loses because failure to exhaust administrative remedies is nonetheless a prerequisite to maintaining suit under both *Zipes* and the statute.

## IV.
### A.

The denial of a temporary restraining order or preliminary injunction is reviewed for abuse of discretion.[11] Torres contends the district court erred in denying her preliminary equitable relief because the court considered only one of the four prerequisites of a claim for injunctive relief, namely Torres's likelihood of success on the merits. Torres's novel claim is at best frivolous.[12]

Torres further cites *EEOC v. Cosmair, Inc.*, 821 F.2d 1085, 1090 (5th Cir. 1987), for the proposition that "[w]hen a statute authorizes injunctive relief, the express statutory language may eliminate some equitable factors required for obtaining injunctive relief." The opinion, however, does not contain the sentence Torres quotes. The closest language to that "quoted" by Torres is "[w]hen an injunction is expressly authorized by statute and the statutory conditions are satisfied, the movant need not establish specific irreparable injury to obtain a preliminary injunction." *Cosmair*, 821 F.2d at 1090.

*Cosmair* only holds that one specific prerequisite for granting preliminary injunctive relief, namely "irreparable injury," may be presumed from the very fact that the statute has been violated. *Id.* It does not support in any way the proposition that *any other* of the four prerequisites for preliminary injunctive relief (*e.g.* substantial likelihood of success on the merits) could be eliminated. Even assuming, *arguendo*, that *Cosmair* had included the cited language, Torres waived this argument by failing to point to any "express statutory language" in the statutes at issue in this case (or caselaw discussing such language) authorizing the elimination of the requirement that a plaintiff establish substantial likelihood of success on the merits.[13]

Torres also claims the district court erroneously concluded that there was no substantial likelihood of success on the merits because there "were facts to the contrary." But the only facts she cites in her appellate brief in support of her entitlement to injunctive relief are facts related to her alleged injury. Yet Torres's losses, even if real, are not legally remediable injuries in light of defendants' Eleventh Amendment defense, Torres's failure to exhaust remedies, failure to serve some defendants, and her own admissions with respect to other defendants. Therefore, absent more, Torres's injuries are insufficient to establish a likelihood of success on the merits.

### B.

Torres asserts that the district court erred in denying her a permanent injunction. She does not brief legal authority or pertinent facts explaining why she would be entitled to a per-

---

[11] *S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 186 (5th Cir. 1982); *Plains Cotton Coop. Ass'n v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1259 (5th Cir.1987).

[12] *See, e.g.*, *Plains Cotton Coop.*, 807 F.2d at 1259 ("A preliminary injunction may not issue unless the movant carries the burden of persuasion as to *all four* prerequisites"); *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979) (same).

[13] *Cf. L&A Contracting Co. v. S. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994) (finding waiver of argument on appeal for failure to cite authority).

manent, as opposed to a temporary, injunction,[14] so she has waived this argument. *Cf. L&A Contracting*, 17 F.3d at 113.

## C.

Lastly, Torres claims the district court abused its discretion in denying her motions for protective orders because she "had given sufficient documentary testimony as to facts supporting the allegations of attacks on her professional work and reputation and violence committed against her by the appellees, particularly when she was on the premises of Webb County, Law Offices of Vinson & Elkins, and other defendants-appellees." Torres fails to explain what these orders were supposed to protect or what her legal basis for entitlement to each of these protective orders was.

Torres's only description of the protective orders is found in the facts section of the brief, where we learn that the district court denied a motion for protective order on March 4, 2003, and that a "second motion for a protective order was denied since plaintiff Appellant was not able to provide a doctor's affidavit as to her infirmities and injuries incurred by her while she was being deposed at the law office of the Appellees." Given the paucity of information provided by Torres on appeal, and even construing her statements as liberally as possible, we are at a loss in trying to understand her legal and factual theory as to how the district court erred in denying the protective orders.[15]

AFFIRMED.

---

[14] Torres also fails to state the standard of review for a denial of a permanent injunction; she cites only the standard for a preliminary injunction.

[15] Apparently, the second motion for a protective order was actually a motion to strike Torres's deposition of September 18, 2003. At the October (continued...)

---

[15](...continued) 24, 2003, conference, Torres described to the district court her need for a protective order as follows:

> This motion was filed because at the deposition of September the 18th, I was sitting there and was being deposed, and some kind of device started heating up, something in my head . . . . Some of the things they said in there were not, you know, competent, because I was thinking about it later and it must have disturbed my thinking that whole heating device and that pain I was feeling in the head.

It appears that other claims for striking the testimony were that the testimony was not competent because Torres was unable to obtain counsel to represent her and that the testimony included "irrelevant, immaterial and privileged matters and should be excluded from evidence." Even with this additional information, which we normally would not need to consider given Torres's failure to brief the issue in any cogent manner, we do not see any abuse of discretion in the court's decision to request a doctor's affidavit to confirm that her testimony at the deposition was not competent.