**Dralves Gene EDWARDS, Appellant,**

v.

**BLUE CROSS BLUE SHIELD OF TEXAS, A Division of Health Care Service Corp., Appellee.**

**No. 05–07–01281–CV.**

Court of Appeals of Texas, Dallas.

Dec. 19, 2008.

Rehearing Overruled Jan. 26, 2009.

462

Charles McGarry, Dallas, TX, for appellant.

John B. Scott, Scott Yung, LLP, Dallas, TX, for appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

Appellant, Dralves Gene Edwards, M.D., sued appellee Blue Cross Blue Shield of Texas (Blue Cross), alleging he was a Medicare provider and that Blue Cross, a Medicare Part B carrier, had wrongfully denied almost all of his Medicare claims in 1997 and 1998. Dr. Edwards did not seek recovery for the Medicare claims themselves, which he pursued (mostly with success) through the Medicare administrative review process, but sought recovery for consequential damages based on a variety of state law causes of action.

The trial court granted summary judgment in favor of Blue Cross, and Edwards appealed. For the reasons discussed below, we conclude Edwards's pleadings affirmatively show his state law claims are "inextricably intertwined" with Medicare benefits determinations, and are preempted by the Medicare Act. Thus, we affirm the trial court's judgment.

### BACKGROUND

The Medicare Act, 42 U.S.C. §§ 1395–1395iii, is a federally subsidized health insurance program for elderly and disabled persons consisting of several parts. *See Marsaw v. Trailblazer Health Enters., L.L.C.,* 192 F.Supp.2d 737, 740 n. 2 (S.D.Tex.2002). The Act is administered by the Secretary of the Department of Health and Human Services (HHS), through the Center for Medicare and Med-

Justin L. Williams, Corpus Christi, Charles W. McGarry, Law Office of

icaid Services (CMS). *See RenCare, Ltd. v. Humana Health Plan of Tex., Inc.,* 395 F.3d 555, 556 (5th Cir.2004). CMS contracts with private insurance companies (like Blue Cross) to administer Medicare benefits. *Marsaw,* 192 F.Supp.2d at 740.[1] Under Parts A and B of Medicare, these private contractors process claims for reimbursement from health care providers and determine whether the expenses are covered by Medicare and whether the services were reasonable and medically necessary. *Id.* If approved, funds are taken from the Federal Supplementary Medical Insurance Trust Fund and paid by the intermediary or carrier directly to the providers for each qualifying service provided to a beneficiary. *RenCare,* 395 F.3d at 558.[2]

Edwards sued Blue Cross on June 30, 2003 for state law breach of contract and tort claims relating to Blue Cross's denial of nearly all of his Medicare Part B reimbursement claims over a two-year period. He later amended his petition to sue Trailblazer Health Enterprises, L.L.C. Trailblazer removed the case to federal court alleging it acted as a fiscal agent of the Secretary of HHS and removal was proper under 28 U.S.C. § 1442(a)(1), allowing removal by an "officer of the U.S. or any agency thereof, or persons acting under that officer" where the defendant was "acting under color of such office." Edwards then dismissed Trailblazer from the suit and filed a motion to remand. The federal court granted the motion to remand after it concluded Blue Cross did not timely remove the suit to federal court and failed to establish another basis for federal jurisdiction.

The facts are taken from Edwards's live pleading, his sixth amended petition filed a month after he filed his response to Blue Cross's motion for summary judgment.[3] Edwards alleged he was a provider of Medicare services and Blue Cross was the Medicare Part B carrier obligated to reimburse him for medical services he provided to Medicare beneficiaries. Edwards alleged that Blue Cross, in connection with negotiations for its acquisition by Health Care Service Corporation, adopted a program that "targeted doctors who were the largest billers to the Medicare systems in a given area in order to systematically eliminate these physicians from the system." The purpose of this program was to improve Blue Cross's standing with the federal government because Blue Cross was "in danger of losing [its] contract with the government regarding [its] Medicare

1. These private insurance companies are known as "fiscal intermediaries" under Part A and Medicare "carriers" under Part B. 42 U.S.C. §§ 1395h, 1395u. Part A generally covers inpatient medical services, while Part B covers most out-patient services such as doctor visits. *See* 42 U.S.C. §§ 1395d–1395i–5; 1395k–1395w–4.

2. Although this case involves Medicare Part B, it is important to distinguish Medicare Part C programs. Part C provides a managed care option to Medicare enrollees and is administered by private, managed health care organizations or HMOs. *RenCare,* 395 F.3d at 556. Part C differs from Parts A and B in that it is based on a fixed monthly payment to Part C organizations for providing medical care to Medicare patients. *Id.* 395 F.3d at 556–57. A Part C organization does not review claims from medical providers to determine the amount of allowed reimbursement for medical services; it "receives a fixed amount per month for each enrolled [Part C] patient regardless of the value of services the patient actually receives." *Id.* The organizations may freely enter into contracts with other providers to provide services, but assume all risk of expenses for medical services and maintain arrangements for insolvency. *Id.* at 558–59.

3. Blue Cross disputes many of the facts alleged in Edwards's petition, but agrees for purposes of review those allegation can be taken as true.

services in Texas." On August 26, 1997, Edwards was notified that he was being placed on 100% pre-payment review for his Medicare billings. He alleged Blue Cross "negligently" administered the pre-payment review and "fraudulently" denied almost 100% of his Medicare billings over a two-year time frame, forcing him to close his medical practice. Edwards claims he is seeking damages he sustained as a result of the breach of contract and torts he alleges and not under "any derivative claim based upon any assignment of patient benefits."

Edwards alleged he was a third-party beneficiary of Blue Cross's contract with CMS and Blue Cross breached that contract not by placing him on pre-payment review, but by failing to actually review all of his claims and investigate the validity of the services rendered after placing him on pre-payment review. He alleged Blue Cross was "not only liable for the money owed to [him] for the individual bills, but for the foreseeable consequences of their actions."

Blue Cross filed a motion for summary judgment under rule 166a(b), but did not attach any summary judgment evidence.[4] TEX.R. CIV. P. 166a(b). The motion raised four grounds for summary judgment: (1) lack of subject matter jurisdiction because Edwards's claims arise under the Medicare Act and must be pursued in the administrative process and federal court; (2) sovereign immunity based on Blue Cross's performance of official functions of the Secretary under its contract as a Medicare carrier; (3) the statute of limitations barred the state law claims and the statute was not tolled while Edwards sought administrative review of the denial of Medicare benefits; and (4) Edwards's state law claims were preempted by the Medicare Act and his only remedy is the administra-

tive review of benefit determinations and federal judicial review of adverse decisions of the Secretary. After extensive briefing, pleading amendments, and motions relating to the motion for summary judgment, the trial court conducted a hearing and signed an order granting the motion for summary judgment without specifying the grounds therefor.

Edwards appeals and brings one issue (with seven sub-issues) arguing the trial court erred in granting summary judgment. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). The first three sub-issues argue Blue Cross's motion was insufficient to prove any of its defenses because it failed to introduce evidence; a no-evidence motion cannot be used by a defendant to prove affirmative defenses; and the summary judgment can be reviewed only on Edwards's pleadings and evidence. The last four sub-issues argue the trial court had jurisdiction and Blue Cross failed to conclusively prove each of the affirmative defenses of preemption, sovereign immunity, and statute of limitations.

### STANDARD OF REVIEW

We apply well-established standards of review to summary judgments. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985) (summary judgment standards of review); *see also King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003) (no-evidence summary judgment standards of review).

█ Edwards argues Blue Cross's motion for summary judgment was insufficient because it failed to attach summary judgment evidence. A defendant may "move with or without supporting affidavits for a summary judgment in his favor

---

4. The motion states in the alternative that it is a no-evidence motion under rule 166a(i).

as to all or any part" of a claim against him. Tex.R. Civ. P. 166a(b). A party may also move for traditional summary judgment based on the pleadings and judicial admissions of the opposing party. *See Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972); *Washington v. City of Houston,* 874 S.W.2d 791, 794 (Tex.App.-Texarkana 1994, no writ) ("where the plaintiff's pleadings themselves establish the lack of a valid cause of action, such as the fact that the statute of limitations has run, or if the pleadings allege facts that, if proved, establish governmental immunity, pleadings alone can justify summary judgment and special exceptions are not required"). Pleadings may be used as summary judgment evidence when they contain statements rising to the level of admitting a fact or conclusion which is directly adverse to that party's theory or defense of recovery. *Judwin Props., Inc. v. Griggs and Harrison,* 911 S.W.2d 498, 504 (Tex. App.-Houston [1st Dist.] 1995, no writ).

■ Edwards also argues Blue Cross's motion fails as a no-evidence motion for summary judgment because it seeks to establish Blue Cross's own affirmative defenses. To this extent, we agree. A no-evidence motion for summary judgment must attack a specific element of the opposing party's cause of action or defense; it cannot be used to establish the movant's own cause of action or defense. *See* Tex.R. Civ. P. 166a(i) (party may move for no-evidence summary judgment on "one or more essential elements of a claim or defense *on which an adverse party would have the burden of proof at trial*") (emphasis added); *de la Garza v. de la Garza,* 185 S.W.3d 924, 927 (Tex.App.-Dallas 2006, no pet.). We also agree with Edwards that Blue Cross's motion for summary judgment should be reviewed based on his pleadings and the evidence he presented in response to the motion.

■ We will consider Blue Cross's motion as a motion for summary judgment on Edwards's pleadings. We assume the allegations of fact in Edwards's pleadings are true and indulge all inferences from the pleadings in his favor. *See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994). Summary judgment may be proper if the allegations in the pleading affirmatively show the claims are barred as a matter of law and the defects cannot be cured by amendment. *See In re B.I.V.,* 870 S.W.2d 12, 13 (Tex.1994).

### DISCUSSION

### A. Jurisdiction

■ We discuss the jurisdiction issue first. Blue Cross asserted in its motion for summary judgment that the Medicare Act deprived the trial court of jurisdiction to hear Edward's state law claims because the state law claims were inextricably intertwined with a claim for Medicare benefits and therefore they arose under the Medicare Act. *See Heckler v. Ringer,* 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Edwards counters that his claims are state law statutory, tort, and contract claims not for the Medicare benefits themselves—he has sought those through administrative appeal under Medicare—but for foreseeable consequential damages arising from Blue Cross's allegedly wrongful denial of the original claims. He argues these state law claims are within the jurisdiction of a Texas district court.

■ A Texas district court is a court of general jurisdiction and is presumed to have subject matter jurisdiction unless a showing is made to the contrary. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 ("all claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere"). Federal

district courts are courts of limited jurisdiction and subject matter jurisdiction is never presumed. *Id.*

The Texas supreme court has stated that

[f]ederal preemption "is ordinarily a federal defense to the plaintiff's suit" but does not ordinarily deprive a state court of jurisdiction. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). As a result, "[t]here are thus some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule." *Romney v. Lin,* 105 F.3d 806, 813 (2d Cir.1997) (denying rehearing). Consequently, we disagree with the court of appeals' conclusion that federal preemption, without more, would necessarily deprive the trial court of jurisdiction.

*Mills v. Warner Lambert Co.,* 157 S.W.3d 424, 427 (Tex.2005) (per curiam). In keeping with this analysis, we conclude the trial court had jurisdiction to determine the claims alleged by Edwards and whether those claims were preempted by the Medicare Act. We now review the other grounds for summary judgment to determine if they support the trial court's judgment.

**B. Other Grounds for Summary Judgment**

■■■■ The laws of the United States are the "supreme Law of the Land" [5] and "[i]f a state law conflicts with federal law, it is preempted and has no effect." *Great Dane Trailers, Inc. v. Estate of Wells,* 52 S.W.3d 737, 743 (Tex.2001). State law may be preempted in three ways: (1) federal law may expressly preempt state law; (2) federal law may impliedly preempt state law where a "statute's scope indicates that Congress intended federal law

or regulations to occupy the field exclusively"; or (3) federal law may impliedly preempt state law where state law actually conflicts with federal law because it is impossible for a private citizen to comply with both state and federal requirements or state law obstructs accomplishing and executing Congress' full purposes and objectives. *BIC Pen Corp. v. Carter,* 251 S.W.3d 500, 504 (Tex.2008) (citations omitted).

■■■■ Under 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, it is clear that section 405(g) "is the sole avenue for judicial review of all 'claims arising under' the Medicare Act." *Heckler,* 466 U.S. at 615, 104 S.Ct. 2013. Under 42 U.S.C. § 405(g), a final decision of the Secretary of HHS (issued only after exhaustion of all administrative review) may be reviewed in federal district court. *See Marsaw,* 192 F.Supp.2d at 744. A claim arises under the Medicare Act if it is " 'inextricably intertwined' with a Medicare benefits determination," or if " 'both the standing and the substantive basis for the presentation' of the claim" is the Medicare Act. *Kaiser v. Blue Cross of Cal.,* 347 F.3d 1107, 1112 (9th Cir.2003) (quoting *Heckler,* 466 U.S. at 614, 615, 104 S.Ct. 2013). Because Edwards's claims are arguably based on state law, we are concerned only with the first test-whether the claims are inextricably intertwined with a Medicare benefits determination. *Id.; see RenCare,* 395 F.3d at 557.

Several federal courts have addressed state law claims very similar to Edwards's and concluded those claims were inextricably intertwined with claims for Medicare reimbursement, and thus arose under the Medicare Act. In *Bodimetric Health Ser-*

---

**5.** U.S. Const. art. VI, cl. 2.

vices, Inc. v. Aetna Life & Casualty, 903 F.2d 480 (7th Cir.1990), Bodimetric alleged the Secretary released a contractor evaluation critical of Aetna's performance as a Medicare carrier. In response, and in order to improve its contract performance evaluation and retain its contract as a fiscal intermediary, Aetna began denying Bodimetric's applications for reimbursement on a regular basis. *See id.* at 482–83. Bodimetric claimed this "arbitrary campaign of denials" caused it to close its facilities and lose $8 million. *Id.* Bodimetric sued Aetna seeking damages for fraud and other tort and contract causes of action. *Id.* Bodimetric alleged Aetna denied "thousands of claims without regard to their underlying substance" and, like Edwards, asserted "that administrative law judges [had] reversed almost all of Aetna's denials where Bodimetric [had] entered an appearance and argued for reversal." *Id.*[6] The court concluded all of Bodimetric's claims arose under the Medicare Act, stating a "party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits." *Id.* at 487.[7] The court acknowledged the congressional intent behind the Medicare procedures:

> By enacting the exclusive review provisions of the Medicare Act, Congress expressly limited the remedies that can be sought by dissatisfied claimants from fiscal intermediaries. While this may, in some cases, foreclose avenues of relief generally available to civil litigants, it is also the system Congress clearly intended to implement. Any decision to modify this aspect of the system must be made by Congress, not by the courts.

*Id.* at 490.

In *Kaiser,* a provider of home health services to Medicare beneficiaries, CHH, substantially reduced the number of its patients and services it provided as a result of pending changes to the rules on allowable costs of home health agencies. 347 F.3d at 1110. However, CHH continued to receive interim payments at relatively high levels based on its prior patient volume. *Id.* As a result, it was overpaid more than a million dollars. CHH sought an extended repayment plan from Blue Cross, but Blue Cross denied the request and decided to withhold all Medicare payments until the overpayment was recouped. Thereafter CHH closed its operations and filed bankruptcy. *Id.* The Kaisers, former shareholders of CHH, obtained from the bankruptcy trustee an assignment of any CHH claims related to Medicare. They then sued

---

**6.** The court explained Bodimetric's argument in more detail:

> In the case before us, Bodimetric declares that its state law claims against Aetna are not inextricably intertwined with a challenge under the Medicare Act to Aetna's denials of individual claims. Essentially, Bodimetric argues that it seeks damages from Aetna's own pocket, not from the Medicare Trust Fund. Moreover, Bodimetric maintains that it cannot raise its challenges to Aetna's unlawful behavior in the administrative hearings provided by the Medicare regulations, and that it does not have other regulatory avenues of relief in which it may pursue its claim.

*Bodimetric,* 903 F.2d at 484. Edwards makes similar arguments in this case.

**7.** *Bodimetric* distinguished between challenges to the amount of benefits, which required administrative exhaustion, and challenges to the regulatory scheme for calculating benefits, which did not. 903 F.2d at 485. That distinction is not longer necessary because the 1986 amendments to the Medicare Act made Part B determinations reviewable to the same extent as Part A determinations. *See U.S. ex rel. Body v. Blue Cross and Blue Shield of Al., Inc.,* 156 F.3d 1098, 1102 n. 22 (11th Cir. 1998).

Blue Cross and the HCFA[8] under several state and federal laws alleging Blue Cross's conduct forced CHH into bankruptcy, causing CHH's (now the Kaisers') damages. *Id.* at 1111. The Kaisers argued their claims did not arise under Medicare because they sought damages other than the Medicare payments and noted CHH was pursuing the claim for Medicare payments through the administrative process apart from the Kaisers' claims. *Id.* at 1112 n. 2. The ninth circuit concluded *"Bodimetric* is perfectly applicable to the facts in this case" and the Kaisers' claims were "inextricably intertwined" with CHH's claims for Medicare reimbursement. *Id.* at 1114–15 ("Hearing most of the Kaisers' claims would necessarily mean redeciding Blue Cross's CHH-related Medicare decisions."). Even though the Medicare administrative review process would not provide them with the damages they sought, "administrative exhaustion of the Kaisers' claims would still serve the purposes of exhaustion and not be futile in the context of the system." *Id.* at 1115. The court affirmed the district court's dismissal of the suit for failure to exhaust administrative remedies. *Id.*

In both *Bodimetric* and *Kaiser,* the plaintiffs had undertaken the administrative review process with respect to their Medicare reimbursement claims, but had not entirely completed the process. Edwards contends this is a critical distinction from his case because he has completed-and won-the vast majority of the administrative reviews of Blue Cross's denials of his Medicare claims. Thus, despite the obvious similarity between his claims and those in *Bodimetric* and *Kaiser,* Edwards claims he can now sue in state court to recover consequential damages for delays in making those payments.

However, the Fifth Circuit Court of Appeals has concluded that even if an administrative review of the Medicare reimbursement claims has been completed, state law claims based on the alleged wrongful denial of those claims still "arise under" Medicare and thus were properly dismissed. *Marsaw v. Thompson,* 133 Fed.Appx. 946, 949 (5th Cir.2005) (not designated for publication). In that case, Marsaw initially sued Trailblazer and the Secretary alleging racial discrimination and various tort and breach of contract claims based on Trailblazer's placing of his clinics "in pre-payment review (which forced the clinics to engage in lengthy administrative work to receive Medicare reimbursements) and then denied reimbursements of the submitted claims, ultimately forcing Marsaw out of business." *Id.* at 947.[9] Marsaw's initial suit was dismissed by the district court for his failure to exhaust administrative remedies under the Medicare Act. *See Marsaw,* 192 F.Supp.2d at 737. He did not appeal that decision. *Marsaw,* 133 Fed.Appx. at 947. Instead, after the administrative review of his Medicare claims was completed and he received payment of 98 percent of the claims denied by Trailblazer, Marsaw filed a second suit seeking an additional $50 million in damages from the Secretary and Trailblazer for initially denying his claims. *Marsaw,* 133 Fed.Appx. at 947.

The fifth circuit determined that

---

8. The Health Care Financing Administration is now known as CMS. *See Marsaw,* 192 F.Supp.2d at 740.

9. Edwards made a similar discrimination claim in his sixth amended petition. Marsaw also alleged due process and equal protection violations, breach of contract, tortious interference with contract and prospective business relations, and civil rights violations. *See Marsaw,* 192 F.Supp.2d at 741.

to fully address Marsaw's claim that his constitutional rights were violated through improper enforcement of Medicare regulations, a court would necessarily have to review the propriety of thousands of Trailblazer's Medicare claims determinations and the decisions of its hearing officers to determine whether there was legitimate doubt about Marsaw's compliance.

*Id.* at 948. The "sole avenue" for judicial review of all claims arising under the Medicare Act is section 405(g) and a "condition for jurisdiction under § 405(g) is that the Medicare system has made a determination adverse to the claimant." *Id.*

▮▮▮▮ We conclude that the trial court would have to review each of Edwards's Medicare reimbursement claims and Blue Cross's decisions to deny them in order to determine if there was a good faith or non-tortious basis for Blue Cross's actions. Even though Edwards has now received an administrative review, he wants to go further and recover amounts in addition to the benefits. To do so, he must prove the original denial was not only incorrect, but was also tortious or a breach of a contractual or statutory duty. However, Medicare only permits a judicial review after exhaustion of administrative reviews and an adverse decision. *Marsaw,* 133 Fed.Appx. at 948. When the administrative review results in payment or a favorable decision for the provider, the statute permits no further review. *Id.* Thus we conclude that, like Marsaw's claims, Edwards's claims "arise under the

Medicare Act (and are not collateral to it) because they are 'inextricably intertwined' with plaintiffs' substantive claims for entitlement under Medicare." *Id.*

Edwards filed a post-submission letter brief arguing *Marsaw* and similar cases are distinguishable because the federal courts concluded only that federal jurisdiction was lacking and did not decide whether state law claims remained for a state court to decide. We are not persuaded by his arguments. While the federal court in *Marsaw* refused to exercise its discretionary supplemental jurisdiction to address the state law claims,[10] the reasoning and analysis of the court's opinion clearly indicates any state law claims were inextricably intertwined with Medicare and thus preempted by the Medicare Act. *See Marsaw,* 133 Fed.Appx. at 948 (addressing Marsaw's claims would require reviewing thousands of the carrier's Medicare claims determinations "to evaluate whether there was legitimate doubt about Marsaw's compliance").[11]

▮▮▮ Edwards argues his claims do not arise under the Medicare act because he is not seeking to recover Medicare benefits, but "foreseeable consequential damages he incurred when he was forced to close his medical practice as a proximate result of Blue Cross' [sic] conduct in denying him any revenue for a period of two years." However, a suit seeking non-Medicare damages may still arise under the Medicare Act. *See Marin v. HEW, Health Care Fin. Agency,* 769 F.2d 590, 592 (9th Cir. 1985) (noting provider's suit for damages

10. *See Marsaw,* 133 Fed.Appx. at 949 ("In light of the above, Marsaw has shown no error with regard to the dismissal of his supplemental state law claims.").

11. The court also concluded the carrier, Trailblazer, qualified for sovereign immunity "because it was acting under the direction of the federal government in performing duties delegated by HHS." *Marsaw,* 133 Fed.Appx. at 949. Marsaw's claims arose from Trailblazer's decisions to pay or deny reimbursements; actions within the scope of its official duties and entitling Trailblazer to "the same official immunity as officers or employees of the United States performing discretionary duties." *Id.*

caused by negligent failure to process claims was "anticipated by the statute" and provider's "demand for greater damages than the statute provides would render meaningless the jurisdiction restriction of § 405(h)"). *Bodimetric* also recognized that congress has limited the remedies available for dissatisfied providers. *Bodimetric*, 903 F.2d at 487 n. 5 (observing administrative process may not afford plaintiff all relief it sought pursuant to its state law claims, but "Congress, through its establishment of a limited review process, has provided the remedies it deems necessary to effectuate the Medicare claims process"). As the ninth circuit recognized, "The fact that the Kaisers seek damages beyond the reimbursement payments available under Medicare does not exclude the possibility that their case arises under Medicare. Simply put, the type of remedy sought is not strongly probative of whether a claim falls under § 405(h)." *Kaiser*, 347 F.3d at 1112; *see also Marsaw*, 133 Fed.Appx. at 948.

Edwards argues not all state law tort claims relating to Medicare benefits are preempted by the Medicare Act. *See Ardary v. Aetna Health Plans of S. Cal.*, 98 F.3d 496 (9th Cir.1996); *Kelly v. Advantage Health, Inc.*, 1999 WL 294796 (E.D.La. May 11, 1999) (not designated for publication). Those and similar cases, however, are distinguishable as they involved claims by the Medicare beneficiary or their representatives for wrongful death or damages for state law torts for delays in granting the benefits.[12] These cases are not persuasive in light of other cases more closely on point. Indeed, in *Kaiser*, a case very similar to Edwards's, the ninth circuit expressly limited its holding in *Ardary* to patient tort claims. *Kaiser*, 347 F.3d at 1114 ("the *Ardary* analysis convinces us that its holding does not extend beyond patients and torts committed in the sale or provision of medical services").[13]

Like other courts, we are "persuaded by *Bodimetric* and subsequent cases holding that claims for consequential damages resulting from adverse decisions by Medi-

---

**12.** In *Ardary*, the survivors of a Medicare beneficiary brought state law wrongful death claims against the Medicare carrier based on its refusal, despite prior representations, to authorize airlift transportation for the beneficiary from a remote area following a heart attack. *Ardary*, 98 F.3d at 496–98. *Kelly* involved claims brought by the Medicare beneficiary against his Medicare HMO for delays in authorizing in-patient treatment. *Kelly*, 1999 WL 294796 at *1–2.

**13.** We also distinguish cases involving Medicare Part C, an HMO program, because of the differences between the fixed payment HMO system and the provider reimbursement programs of Medicare Part A and Part B. *See RenCare*, 395 F.3d at 556–57, 558–59 (discussing characteristics of Medicare Part C and distinguishing Part A and B cases because of the financial risk borne by the administering entity under Part C); *Christus Health Gulf Coast v. Aetna, Inc.*, 237 S.W.3d 338, 339–40, 343 (Tex.2007) (discussing features of Medicare Part C or Medicare Advantage program; and stating "it is unclear whether *Heckler*'s

'arising under' test even applies to Medicare Advantage [Part C] claims."). It is undisputed that all of Edwards's allegations arise out of his status as a Medicare Part B provider and Blue Cross's role as a Medicare Part B carrier.

*RenCare, Ltd. v. U. Med. Resources, Inc.*, 180 S.W.3d 160 (Tex.App.-San Antonio 2005, no pet.) is also distinguishable. In that case, a health care provider sued the patient's private health insurance plan to recover payment for services rendered to the patient based on plan's representation it had primary coverage for the services. *Id.* at 163. The plan later denied coverage and, after suit was filed, argued Medicare Part B was the primary payer for the services. *Id.* The Medicare carrier, Trailblazer Health Enterprises, denied coverage because the insurance plan was primary. *Id.* at 164. The suit did not arise under the Medicare Act because it was a suit between two private entities over coverage under a private health insurance plan. *Id.* at 169–70.

care carriers are 'inextricably intertwined' with claims for benefits." *Reg'l Med. Transp., Inc. v. Highmark, Inc.,* 541 F.Supp.2d 718, 729 (E.D.Pa.2008). Edwards's claims are based on Blue Cross's alleged wrongdoing in the course of reviewing and administering his Medicare reimbursement claims. Edwards alleges most of those reimbursement claims have been paid after administrative review, but "[t]o the extent that plaintiffs have obtained the relief sought in those proceedings, plaintiffs are limited to that recovery and cannot obtain more than permitted by the Medicare program by couching their claims as state law challenges." *Id.* "[I]rrespective of what relief plaintiffs actually obtained in the administrative process, [42 U.S.C.]§ 405(h) bars judicial review of plaintiffs' state law tort claims, all of which are 'inextricably intertwined' with claims for Medicare benefits." *Id.* Because Edwards has now exhausted his administrative remedies and obtained "precisely the Medicare payments he claims were wrong-

fully denied, and the statute entitles him to no other relief, his case is moot." *Marsaw,* 133 Fed.Appx. at 948.

## CONCLUSION

We conclude Edwards's pleading and the record establish his claims are preempted as a matter of law and this impediment to his suit cannot be corrected by amending his pleadings.[14] Because this ground is sufficient to support the trial court's summary judgment, we need not address the remaining sub-issues raised in Edwards's appeal. TEX.R.APP. P. 47.1. We overrule Edwards's sole issue on appeal.

We affirm the trial court's judgment.

14. Although Edwards argues his suit should not be dismissed without the opportunity to amend, he did amend his petition in response to the motion for summary judgment and fails to explain how he can amend his pleading to avoid preemption of his claims.