# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH
### NO. 02-14-00065-CV


JIMMY AND KAREN LEWIS                                    APPELLANTS

V.

BELL HELICOPTER TEXTRON,                                    APPELLEE
INC.

----------

## FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. 2013-70726-431

----------

## MEMORANDUM OPINION[1]

----------

This is a nuisance case. Appellants Jimmy Lewis and Karen Lewis sued Appellee Bell Helicopter (Bell) for private nuisance, seeking damages, a temporary injunction, and a permanent injunction. The trial court granted summary judgment for Bell. In two issues, the Lewises argue that the trial court

---

[1] *See* Tex. R. App. P. 47.4.

erred by granting summary judgment on the grounds of preemption and limitations. Because we hold that the trial court did not err by granting summary judgment as to the requested injunction and that the trial court did err by granting summary judgment as to the Lewises' claim for nuisance damages, we reverse the trial court's judgment in part and affirm in part.

**Background**

The Lewises live in Justin, Texas. Approximately half a mile to the west of their property, Bell operates a helicopter training academy at a private helicopter pad.[2] Bell has been operating the academy there since about five years before the suit was filed. The focus of the Lewises' complaint is the flight path the school uses for training flights.

The Lewises alleged that starting in the summer of 2011, "the training staff began to persistently adopt a flight path that is well to the east of the [Lewises' western] fence line and in very close proximity to [their] home"; previously, Bell's staff had been instructed by Bell management to follow a path to the west of the Lewises' property line. The Lewises alleged that "training typically starts at 7:30 a.m. in the morning and will continue unabated until 8:00 p.m. and has at times continued until 11:30 p.m.," and "[a]s a part of the training, the helicopters fly low and in a large oval." The training schedule and flight path "results in overhead

_____

[2]The evidence in the record is that Bell flies its training flights in Class D airspace under an agreement with Alliance Airport, which is owned by the City of Fort Worth. The Lewises did not sue Alliance or Fort Worth in this suit.

flights coming near the home approximately every 5 minutes, depending on the number of trainers in the air at one time"; "[t]here is almost always one in the air and typically as many as five or six." Consequently, "there is almost always a continual din of helicopter noise at the Lewis[es]' home."

Bell's answer raised a number of affirmative defenses, including the defense that the Lewises' claims were preempted by federal law and were barred by the applicable statute of limitation. It stated that preemption applies because the United States government "has exclusive sovereignty of airspace in the United States," and as such, "[l]andowners have no right to exclude overflights above their property because airspace is part of the public domain." It also asserted that limitations applied because the claim was brought after the period for bringing suit allowed under section 16.003(a) of the civil practice and remedies code.[3]

In an amended petition, the Lewises asserted that their claims were not preempted by federal law because not all common law remedies for airport noise have been preempted. They stated that "[i]t is appropriate to permit common law remedies if the claim is grounded in an action recognized by state law that is not

_____

[3]*See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2014) ("[A] person must bring suit for trespass for injury to the estate or to the property of another . . . not later than two years after the day the cause of action accrues."); *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004) (recognizing that the limitations period for a private nuisance claim is two years), *modified by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474 (Tex. 2014).

3

addressed by federal regulation and does not question federal decisions or extract money from those who abide by those federal decisions." They asserted that "[d]ozens of cases in many states have upheld private nuisance actions against private airports or helipads."

The Lewises included with the amended petition their own joint affidavit in which they stated that one day in the summer of 2011, a helicopter dive-bombed their property twice. Jimmy Lewis called Bell and spoke to Bell employee Marty Wright about the helicopters flying too close. Wright told Jimmy that the helicopters were supposed to use the Lewises' western fence line as a path. After the phone call, the helicopters generally stayed at or to the west of that line. Eventually, the helicopters began flying closer to their home again, but a phone call to Wright corrected the problem. This pattern repeated until Wright left the position and was replaced by C.T. Lewis.[4] When helicopters began straying over the property line closer to their home, Jimmy would call, but Lewis stopped taking his calls.

The trial court denied the Lewises' request for a temporary injunction. Bell then filed a motion for summary judgment asserting two grounds: limitations and preemption. As to limitations, Bell asserted that the alleged nuisance was a permanent nuisance, and therefore a claim based on the nuisance accrued when Bell first began operations in its practice area. Because operations began more

---

[4]The record suggests that this person's name is Barbara Lewis.

than two years before the suit was filed, the two-year statute of limitations barred any nuisance claim.

As for preemption, Bell asserted that courts had consistently held that non-federal attempts to regulate the operation of aircraft within U.S. airspace were preempted. And it asserted that the case law on which the Lewises relied[5] held that a state may apply damages remedies only to enforce federal requirements or to regulate aspects of airport operations over which the state has discretionary authority.

The Lewises filed a response addressing both grounds. As to preemption, the Lewises argued that their claims were not preempted because they did not seek restrictions on the day, time, or number of flights and did not seek to impose an outright "no-fly zone" over their home. Rather, they asked that on a day-to-day basis, the training pattern be moved a small distance to the west. They pointed out that Bell had previously altered its flight pattern to the one requested by the Lewises with "no apparent detriment to operations." And they cited *Wood v. City of Huntsville*[6] to refute the argument that federal law preempted their claims.

As for the limitations ground, the Lewises pointed out that they were not complaining about the presence of the helicopter pad or Bell's right to train pilots

---

[5]*See Bieneman v. City of Chicago*, 864 F.2d 463, 473 (7th Cir. 1988).

[6]384 So.2d 1081, 1083 (Ala. 1980).

using the pad; they complained only about the flight path the school was using for training. They asserted that when the facility was first started, there were few flights. Over time, the number of flights increased, and the routine training flight pattern changed and began coming closer to their home. They reiterated that it was only in the summer of 2011 that the training path was persistently set on a route closer to their home, resulting in a nearly continual din of helicopter noise at their home. The Lewises supported these assertions with their own affidavits.

The trial court granted summary judgment for Bell, and the Lewises now appeal.

### Standard of Review

Federal preemption is generally treated as an affirmative defense.[7] A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[8] To

---

[7] *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 & n.7 (Tex. 1991) (distinguishing, for purposes of determining subject-matter jurisdiction, between a preemption argument that affects the choice of forum and one that affects the choice of law and holding that preemption under ERISA is an affirmative defense when "ERISA's preemptive effect would result only in a change of the applicable law"); *Kiefer v. Cont'l Airlines, Inc.*, 882 S.W.2d 496, 497 (Tex. App.—Houston [1st Dist.] 1994), *aff'd*, 920 S.W.2d 274 (Tex. 1996) (stating that "[f]ederal preemption is an affirmative defense").

[8] *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense.[9]

We review a summary judgment de novo.[10] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[11] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[12]

The trial court granted summary judgment for Bell without specifying the basis for its order. Accordingly, we must affirm the judgment if either of Bell's summary judgment grounds has merit.[13]

## Discussion

## 1. Whether the Lewises' claims for injunctive relief and for damages based on nuisance were preempted

The Lewises argue in their first issue that the trial court erred by granting summary judgment because Bell failed to establish as a matter of law that their

---

[9]*See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

[10]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[11]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[12]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[13]*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

nuisance claims were preempted. They contend that their claims pertain to a non-commercial training flight pattern adopted by a private company emanating from a privately-owned heliport, and federal aviation law therefore does not preempt a nuisance claim under state law.

In Bell's motion for summary judgment, Bell raised preemption as a no-evidence summary judgment ground, arguing that because preemption applies, the Lewises had to prove but had no evidence of a violation of federal aviation law. Bell, however, had the burden of proving each element of its affirmative defense as a matter of law.[14] Thus, before the Lewises had to produce any evidence to defeat summary judgment, Bell first had to meet its burden to show that preemption applied. To meet that burden, Bell attached evidence to its motion.

The Lewises do not complain that Bell, through its no-evidence motion, attempted to improperly shift the burden of disproving preemption onto them. They challenge whether Bell established the applicability of preemption, treating the preemption ground as a traditional summary judgment ground. Thus, it appeared to the Lewises, as it does to this court, that Bell's motion was a

---

[14] *See* Tex. R. Civ. P. 166a(i) (stating that a party may move for no-evidence summary judgment on a claim or defense on which the *adverse* party would have the burden of proof at trial); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) ("When a defendant moves for summary judgment based on an affirmative defense, . . . the defendant, as movant, bears the burden of proving each essential element of that defense."); *Kiefer*, 882 S.W.2d at 497 (preemption is an affirmative defense).

traditional motion as to the application of preemption, and a no-evidence motion only as the question of whether there was evidence to show a violation of federal law or regulations.[15] We therefore review the record to see if Bell established its preemption affirmative defense as a matter of law,[16] keeping in mind that "[t]he presumption is against pre-emption."[17]

## 1.1. The Lewises' claim for injunctive relief was preempted

We preface our analysis with an observation about the limited nature of our analysis and holding. Cases addressing preemption in the context of suits against air carriers (which, from the record, this flight school does not appear to be[18]) or airports commonly involve a state or local government that, using its

---

[15]*See Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004) ("The fact that evidence may be attached to a motion that proceeds under [civil procedure rule 166a] subsection (a) or (b) does not foreclose a party from also asserting that there is no evidence with regard to a particular element."); *cf. Edwards v. Blue Cross Blue Shield of Tex.*, 273 S.W.3d 461, 466 (Tex. App.—Dallas 2008, pet. denied) (agreeing with the nonmovant that the movant's no-evidence summary judgment motion should be treated as a motion for summary judgment on the nonmovant's pleadings when the movant sought to establish its own affirmative defense).

[16]*See Travelers Ins. Co.*, 315 S.W.3d at 862.

[17]*See Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 741, 105 S. Ct. 2380, 2390 (1985); *see also Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2d Cir. 2011) ("There is a rebuttable presumption against the preemption of the states' exercise of their historic police power to regulate safety matters.").

[18]*See* 49 U.S.C.A. § 40102(a)(2),(5) (West 2007) (defining "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation" and defining "air transportation" as "foreign air

9

police powers, passes a law or ordinance regulating the operations of an airport or air carrier.[19] This case involves a different scenario—a landowner's use of nuisance laws that do not expressly mention or address aviation to regulate the operation of aircraft.

The Lewises' requested injunction directly relates to aviation, the nuisance claims against Bell are based on its operation of a flight training academy, and Bell's argument is that our nuisance law is preempted in the specific circumstances of this case. In this opinion, we consider preemption of the Lewises' specific claims under Texas nuisance law only as applied to the facts of this case. With this limitation in mind, we turn to the merits of the Lewises' issues.

Bell did not argue that Congress has expressly preempted all state regulation in the field of aviation. Even when federal law does not expressly preempt state laws, however, it may implicitly do so, either through "field preemption" or "conflict preemption."[20] As the United States Supreme Court recently explained,

_____

transportation, interstate air transportation, or the transportation of mail by aircraft").

[19]*See, e.g.*, *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 625–26, 93 S. Ct. 1854, 1856 (1973) (considering whether federal law preempted an ordinance of the city of Burbank, California that prohibited "pure jet aircraft" from taking off from its airport between 11 p.m. of one day and 7 a.m. the next day).

[20]*Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (U.S. 2015).

The Supremacy Clause provides that "the Laws of the United States" (as well as treaties and the Constitution itself) "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Congress may consequently pre-empt, i.e., invalidate, a state law through federal legislation. It may do so through express language in a statute. But even where . . . a statute does not refer expressly to pre-emption, Congress may implicitly pre-empt a state law, rule, or other state action.

It may do so either through "field" pre-emption or "conflict" pre-emption. As to the former, Congress may have intended "to foreclose any state regulation in the area," irrespective of whether state law is consistent or inconsistent with "federal standards." In such situations, Congress has forbidden the State to take action in the field that the federal statute pre-empts.

By contrast, conflict pre-emption exists where "compliance with both state and federal law is impossible," or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" In either situation, federal law must prevail.[21]

In this case, Bell argued field preemption, and we therefore consider only whether field preemption applies.[22]

In determining whether Congress intended to preempt a field in an area that has "'been traditionally occupied by the States,' congressional intent to supersede state laws must be 'clear and manifest.'"[23] In the context of field

---

[21] *Id.* at 1594–95 (internal citations omitted).

[22] *See id.* at 1595 ("Since the parties have argued this case almost exclusively in terms of field pre-emption, we consider only the field pre-emption question.").

[23] *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 2275 (U.S. 1990) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977)); *see also City of Burbank*, 411 U.S. at 643, 93 S. Ct. at 1864

11

preemption, the volume and complexity of federal statutes or regulations alone is not sufficient to show an intention to preempt; "merely because the federal provisions [are] sufficiently comprehensive to meet the need identified by Congress [does] not mean that States and localities [are] barred from identifying additional needs or imposing further requirements in the field."[24]

The determination of whether field preemption applies in a particular case does not end with a conclusion that Congress intended to occupy a particular field.  Once a court draws such a conclusion, the court must then determine the scope of that preemption, that is, whether the state law at issue falls within the scope of the preempted field.[25]

Here, Bell argued two grounds of field preemption:  occupation of the field of airspace use and occupation of the field of airspace safety.  First, it argued that "non-federal attempts to regulate the operation of aircraft within United States airspace" are preempted because "the FAA has established a complex airspace structure and has created regulations governing all aspects of the use of that airspace."  Its second preemption argument was that state laws that affect air safety are preempted by federal law because a comprehensive federal

_____

(acknowledging that "noise regulation has traditionally been an area of local, not national, concern").

[24] *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717, 718, 105 S. Ct. 2371, 2377 (1985).

[25] *See Goodspeed*, 634 F.3d at 210.

12

regulatory scheme "evidences the intent for federal law to occupy the field of aviation safety exclusively."

The gist of Bell's argument was that because the Lewises sought through their nuisance claim to compel Bell to use a different flight path for its training flights, they were attempting to use Texas nuisance laws to regulate the use of United States airspace. Bell asserted that because only the federal government may regulate in this area, the Lewises had to allege a violation of federal regulations to make a valid claim.

Discussing the Seventh Circuit's opinion in *Bieneman*,[26] Bell did not dispute that *remedies* available under state law are available in a suit such as this one. But it contended that because state laws regulating airspace are of no effect due to preemption, state law remedies are available only to address violations of *federal* regulations. In other words, it argues that because only federal law is effective in this field, any valid claim must be based on a violation of federal law, but both federal and state law remedies may apply to correct such a violation.

Although the Lewises contended that there was no preemption, they did not disagree (and do not disagree on appeal) that state law remedies are available for violations of federal regulations when preemption does apply. Without taking a position on whether Bell's reading of *Bieneman* (which is only

---

[26]864 F.2d at 472–73.

13

persuasive authority in this court[27]) is entirely correct, we accept for purposes of this appeal the parties' position that state law remedies may still be available even if state controls of flight paths in federal airspace are preempted.

To establish its affirmative defense of field preemption, Bell pointed to federal aviation laws and regulations, case law, and evidence of federal regulation of the airspace that its training flights use. As Bell noted, the Federal Aviation Act (FAA) states that "[t]he United States Government has exclusive sovereignty of airspace of the United States."[28] It requires the administrator of the Federal Aviation Administration to develop plans "for the use of the navigable airspace" and to "*assign* by regulation or order *the use of the airspace* necessary to ensure the safety of aircraft *and* the efficient use of airspace."[29] The administrator is further ordered to "prescribe air traffic regulations on the flight of aircraft" for

(A) navigating, protecting, and identifying aircraft;

(B) protecting individuals and property on the ground;

(C) using the navigable airspace efficiently; and

(D) preventing collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects.[30]

---

[27] *See Little v. Delta Steel, Inc.*, 409 S.W.3d 704, 718 n.17 (Tex. App.—Fort Worth 2013).

[28] 49 U.S.C.A. § 40103(a) (West 2007).

[29] *Id.* § 40103(b)(2).

[30] *Id.*

Further, Bell attached evidence that the training flights take place in Class D airspace, and it pointed out that the federal government has set up regulations to govern flight in that space. These regulations and statutory provisions indicate that the federal government has exclusive sovereignty over assigning the use of United States airspace in order to efficiently use the airspace and to protect individuals and property on the ground. Most importantly, Bell also pointed out that the United States Supreme Court has held that federal law preempts any attempt to use flight path regulation as a means to address aircraft noise.[31]

The federal laws, regulation, and United States Supreme Court case law relied on by Bell showed that Congress intended to occupy the field of managing and regulating flight paths in U.S. airspace. We therefore hold that Bell met the first step of establishing its affirmative defense as to the injunction.

The next step in our analysis is to determine what the scope of that preemption is—would a judgment granting the injunctive relief requested by the Lewises intrude into that field? We conclude that, based on Bell's summary judgment evidence, it would. Bell produced sufficient summary judgment evidence to make a prima facie case that the flights occur in airspace regulated by the federal government and, thus, that a trial court order enjoining a particular

---

[31] *See City of Burbank*, 411 U.S. at 633–34, 93 S. Ct. at 1859–60 (noting that committee reports from the Senate and House with respect to the Noise Control Act of 1972 contained "clear statements that the bills would not change the existing pre-emption rule" and that with respect to airspace management, that existing preemption rule was that federal law preempted the field of noise regulation insofar as it involved controlling aircraft flight).

flight path in that airspace would be regulating in the field occupied exclusively by the federal government.  The Lewises produced no controverting evidence.

The Lewises attempt to take their injunction remedy out of *Burbank*'s reach by pointing out that here, the flights at issue are purely intrastate; more than that, they are purely in the area above and surrounding Bell's training facility.  Before *Burbank*, some courts had held that states could regulate intrastate flights.[32]

But as we stated, Bell's evidence made a prima facie case that the flights at issue here are in airspace regulated by the federal government,[33] the Lewises did not produce evidence disputing that fact, and *Burbank* makes clear that when the federal government regulates flight paths, no state government may also do so.  If there are circumstances under which private, intrastate helicopter training flight paths are not regulated by the federal government, we do not have those circumstances before us today.

The Lewises attempted to distinguish other cases striking down state and municipal laws imposing curfews and other restrictions on flights, such as *Burbank*, on the ground that, unlike the regulations at issue in those cases, the Lewises are not seeking to ban all public flights over their home.  But the Lewises

---

[32] *See Application of Island Airlines, Inc.*, 384 P.2d 536, 548 (1963); *Gardner v. Allegheny Cnty.*, 114 A.2d 491, 498 (1955).

[33] *See* 49 U.S.C.A. § 40103(a); 14 C.F.R. § 91.129 (setting regulations for operations in Class D airspace) (last amended June 7, 2007).

16

are asking the trial court to compel Bell to take a different flight path, and the trial court has no authority to do so.

The Lewises rely on *Wood* to support their argument that their private nuisance action against Bell, as the operator of a private helipad, is not preempted. *Wood* had to do with the location of a heliport on the ground, not the location of aircraft in the sky.[34] This case is not about whether Bell may locate its private helipad in the Lewises' neighborhood.

The Lewises cited *Bieneman* to argue below that state law remedies are permitted if the claim "is grounded in an action recognized by state law that is not addressed by federal regulation." This argument is unavailing because the injunction remedy they seek here—regulation of Bell's flight path—*is* addressed by federal regulation.

As noted by the Lewises, there is evidence in the record that in the past, Bell has changed the path of its training flights in response to the Lewises' concerns, which, at the least, raises a question about whether Bell *could* obtain permission from the Federal Aviation Administration to follow a flight path along the Lewises' western fence line. But whether a new flight path is *possible* is not relevant for deciding whether the trial court may grant the requested injunction. The question is whether, as a remedy for nuisance, a Texas court has the authority to *compel* the new flight path through the application of state law. The

---

[34] *Wood*, 384 So.2d at 1083.

17

answer to that question is no. The trial court is forbidden from granting a remedy provided under state law to dictate to Bell where it may or may not fly; any state authority on which it could make such an order has been made inoperative through the federal government's occupation of the field of flight path regulation.

The Lewises concede that they have not alleged that Bell has violated any federal law or regulation in following its current flight path. If Bell is not violating the only body of law that regulates flight paths in the federally-regulated airspace through which Bell's flights travel, then the trial court cannot enjoin Bell from continuing to use that path. Accordingly, the trial court did not err by determining that Bell had established its affirmative defense of preemption as a matter of law with respect to the Lewises' requested injunctive relief.

## 1.2. The Lewises' claim for nuisance damages was not preempted

Whether the Lewises may recover damages for noise nuisance is a separate question, however. A conclusion that one remedy provided under the law or equity is not available to address a particular wrong does not require the additional conclusion that *no* remedy is available. In the context of defamation, for example, a court may not enjoin a party from making defamatory statements in the future, but it may still hold the speaker responsible after the defendant makes defamatory statements.[35] The trial court cannot order Bell to follow a

---

[35] *See Kinney v. Barnes*, 443 S.W.3d 87, 99 (Tex. 2014) (holding that "the Texas Constitution does not permit injunctions against future speech following an adjudication of defamation" and that the "well-settled remedy for defamation in Texas is an award of damages"), *cert. denied*, 135 S. Ct. 1164 (2015).

particular path for its training flights because it has no authority to control what happens in Class D airspace. But it does not necessarily follow that the Lewises cannot recover damages for Bell's flights to the extent those flights create a nuisance.

The Lewises argue on appeal as they did below that federal law does not preempt their claim for damages. In Bell's summary judgment motion, other than citing to *Bieneman*—which acknowledges with almost no discussion the existence of the federal Noise Control Act of 1972[36]—Bell did not address the extent of federal regulation in the field of aviation noise abatement, whether any such statutes or regulations indicate an intent to occupy the field of aviation noise abatement outside of the field of flight path regulation, and whether the Lewises' claim for damages falls within the preempted field.

The FAA does contain a subchapter on noise abatement that limits the recovery of damages for airport noise in some circumstances, but it specifically allows for the recovery of damages in others.[37] Bell did not argue if or how that

---

[36]Noise Control Act of 1972, Pub. L. No. 92–574, 86 Stat. 1234 (1972) (codified at 42 U.S.C. §§ 4901–4918).

[37] *See* 49 U.S.C.A. §§ 47501–47510 (West 2007 & Supp. 2014). 49 U.S.C.A. § 47506(a) states:

> A person acquiring an interest in property after February 18, 1980, in an area surrounding an airport for which a noise exposure map has been submitted under . . . this title and having . . . knowledge of the existence of the map may recover damages for noise attributable to the airport only if . . . the person shows that . . . after acquiring the interest, there was a

19

section applied in this case. It made no argument and produced no evidence supporting an argument about how the Lewises' claim was prohibited by this section's damages provision or any other federal law. It did not point to any law or evidence indicating that the Lewises' claim for nuisance damages applied to a private flight academy at a private heliport. Bell's arguments about flight safety or airspace use did not directly address damages.

We need not and do not hold that the Lewises' claim for damages was *not* preempted. But we do hold that Bell had the burden to establish that the claim for nuisance damages was preempted by federal law. And until Bell established that federal law preempted the Lewises' claim for nuisance damages, the Lewises had no burden to come forward with any evidence to refute Bell's right to judgment.[38] Bell failed to meet its summary judgment burden, and, accordingly, we sustain the Lewises' first issue as to their claim for damages.

## 2. Whether the statute of limitations bars the Lewises' nuisance claim

The Lewises argue in their second issue that the trial court erred by granting summary judgment because the statute of limitation does not bar their nuisance claim.

Not every use of one's property that causes annoyance to another's

---

significant . . . (A) change in the type or frequency of aircraft operations at the airport; . . . [or] (C) change in flight patterns.

[38] *See Chau*, 254 S.W.3d at 455.

person or property creates a nuisance. [39]   "A 'nuisance' is a condition that *substantially* interferes with the use and enjoyment of land by causing *unreasonable* discomfort or annoyance to persons of ordinary sensibilities."[40] Noise, if sufficiently extreme, may constitute a nuisance. [41]   "The point at which . . . noise grows from annoying to intolerable 'might be difficult to ascertain, but the practical judgment of an intelligent jury (is) equal to the task.'"[42]

"[W]hether an injury is temporary or permanent is a question of law for the court to decide."[43]   However, "questions regarding the facts that underlie the temporary-versus-permanent distinction must be resolved by the jury upon proper request."[44]   Thus, "when the facts are disputed"—such as a dispute "'regarding what interference has occurred or whether it is likely to continue'"— "and must be resolved to correctly evaluate the nature of the injury, the court,

---

[39] *Gulf Oil Corp. v. Vestal*, 231 S.W.2d 523, 525 (Tex. Civ. App.—Fort Worth 1950), *aff'd*, 149 Tex. 487, 235 S.W.2d 440 (1951).

[40] *Schneider*, 147 S.W.3d at 269 (emphasis added).

[41] *Id.*

[42] *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 154–55 (Tex. 2012) (citation omitted) (discussing the accrual of a nuisance claim based on noise and odors from a plant and noting that the plant began operating in 1992, that there was testimony that the plant's noise and odor escalated in 1997 and 1998, that the jury found that substantial interference did not occur until June 12, 1998, and that evidence supported this finding).

[43] *Gilbert Wheeler*, 449 S.W.3d at 481.

[44] *Id.*

upon proper request, must present the issue to the jury."[45]

Nuisance claims have a limitations period of two years, and the time at which a nuisance claim accrues depends on whether the nuisance is temporary or permanent.[46] "A permanent nuisance claim accrues when injury *first* occurs or is discovered; a temporary nuisance claim accrues *anew* upon each injury."[47]

Recently, in *Gilbert Wheeler*, the Supreme Court of Texas summarized the distinction between temporary and permanent nuisance as follows:

> For the sake of clarity, we reformulate these definitions [of temporary nuisance and permanent nuisance] in the following way. An injury to real property is considered permanent if (a) it cannot be repaired, fixed, or restored, *or* (b) even though the injury can be repaired, fixed, or restored, it is substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated. Conversely, an injury to real property is considered temporary if (a) it can be repaired, fixed, or restored, *and* (b) any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty.[48]

In this case, Bell produced evidence of when the flight academy began, but it produced no evidence establishing as a matter of law when the noise rose to the level of constituting a nuisance. Barbara Lewis, Bell's manager of flight training since 2011, stated in an affidavit attached to Bell's motion that

---

[45] *Id.* (citation omitted).

[46] *Schneider*, 147 S.W.3d at 270.

[47] *Id.*

[48] *Gilbert Wheeler*, 449 S.W.3d at 480.

22

> Bell's flight operations at the Practice Area have been consistent over the past 8 years.

> The traffic patterns utilized by Bell for operations at the Practice Area have remained consistent over the past 8 years. The primary changes to the traffic pattern, if any, have been to establish a preferred practice and general recommendation advising Bell aircraft to avoid flying over the Lewis' property, when possible. This is done by flying to the West of the fence line on the boundary of the Lewis[es]' property.

This was the extent of Bell's evidence on when the flight noise became a nuisance. This evidence contradicts the Lewises' contention that the flight patterns have changed. But it does not establish as a matter of law that, prior to 2011, the flights that the Lewises complained of rose to the level of a nuisance. If anything, it supports the Lewises' contention that Bell's flights should not be coming close to their home. And it does not establish as a matter of law that prior to 2011, the flights created a nuisance that could not be repaired, fixed, or restored, or even if it could be repaired, fixed, or restored, it was substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury could be reasonably evaluated.[49]

Even if Bell's evidence had established its limitation defense, the Lewises produced contradictory evidence through their affidavits about when the noise went from irksome to intolerable and thus sufficiently extreme to constitute a nuisance. They also produced evidence that, even if the pre-2011 flights rose to

---

[49] *See id.*

the level of nuisance, the nuisance could be fixed, was intermittent, and was not reasonably predictable.  The Lewises both testified that:

- "When the facility was first started, there were very few flights."

- As time went on, the number of flights increased, the routine training flight pattern changed, and helicopters began coming closer to the house.

- Once the number of flights increased and started coming closer to the house, Jimmy Lewis spoke to the manager of the facility, Marty Wright, and told him that he "wanted to be a good neighbor but that the helicopters were starting to fly too close."  Wright and Jimmy "did a flyover and concluded that flying along the western edge of [the] property would solve the problem."

- "At that point, the helicopters started flying further to the west and would not bother" the Lewises.

- From time to time, the trainers would again depart from the western edge of the property, but the problem would be fixed by a phone call from Jimmy to Wright.

- In the summer of 2011, the noise level and frequency of flights increased, the trainers would no longer follow the western fence line, and Jimmy's phone calls stopped being returned.

- Now, overhead flights come near the Lewises' home approximately every five minutes.  There is almost always one helicopter in the air, and typically as many as five or six.  Training typically starts at 7:30 a.m. and continues virtually unabated until 8:00 p.m. and has at times continued until 11:30 p.m.  As a part of the training, the helicopters fly low and in a large oval. All of these factors combine to effect an almost continual din of helicopter noise at the Lewises' home.

This evidence is some evidence that when the training facility started, there were not many flights; that prior to 2011, the flight path of the helicopters started to concern the Lewises; that Wright fixed the issue; that the flight path changed again from time to time but Wright again fixed it; and that it was not until

2011, when the flights began flying consistently close to the home and increased in noise and frequency that the noise reached the point where the Lewises found the noise intolerable. Thus, the Lewises produced evidence creating a fact issue about whether, prior to 2011, the flights rose to the level of a nuisance, and if they did, whether the nuisance was merely temporary. Accordingly, Bell did not establish its affirmative defense of limitations as a matter of law, and the trial court erred by granting summary judgment on the Lewises' claim for nuisance damages.

We sustain the Lewises' second issue.

## Conclusion

Having overruled the Lewises' first issue as to their claim for injunctive relief, sustained their first issue as to their claim for damages, and sustained their second issue, we affirm the trial court's summary judgment as to their claim for injunction, and we reverse the trial court's summary judgment as to their claim for damages and remand this case to the trial court.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: June 4, 2015

25